UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FIVE ON FIFTY, LLC; GATE
INDUSTRIES, LLC; and SOUTHERN
FILM REGIONAL CENTER-ATLANTA,
LLC,

            Plaintiffs,

 -vs.-

F. RAYMON BEAN; DAVID SHAFFER;
JEFFREY KUEHR; GREENFUELS
ENERGY, LLC; GEORGIA RENEWABLE
POWER, LLC; GRP FRANKLIN, LLC;
GRP MADISON, LLC; GRP NORTH
CAROLINA, LLC; NORTH CAROLINA
RENEWABLE POWER-LUMBERTON,
LLC; and NORTH CAROLINA
RENEWABLE POWER-
ELIZABETHTOWN, LLC,

            Defendants.

Civil Action No.
1:16-cv-3690-TCB

## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

Defendants, by way of special appearance and without waiving but specifically reserving all defenses as to the jurisdiction of this Court, respectfully move this Court to dismiss Plaintiffs' Complaint with prejudice for four reasons.

**First**, Plaintiffs' claims against GRP North Carolina, LLC, North Carolina

Renewable Power-Lumberton, LLC, and North Carolina Renewable Power-Elizabethtown, LLC, as well as Defendants F. Raymon Bean, David Shaffer, and Jeffrey Kuehr are subject to dismissal under Fed. R. Civ. P. 12(b)(2) because this Court does not have personal jurisdiction over them based on the allegations in the Complaint.  **Second**, Plaintiffs' Complaint constitutes an impermissible shotgun pleading under Fed. R. Civ. P. 8.  **Third**, Plaintiffs fail to allege with particularity the circumstances upon which they base their RICO, fraud, and negligent misrepresentation claims as required by Fed. R. Civ. P. 9(b).  **Fourth**, Plaintiffs fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

For these reasons as set forth more fully in the memorandum of law accompanying this Motion, Defendants respectfully request that the Court grant their Motion and dismiss Plaintiffs' Complaint with prejudice.  In the event the Court does not dismiss Plaintiffs' Complaint in its entirety, Defendants respectfully request entry of an Order requiring a more definite statement as to the surviving claims and parties pursuant to Fed. R. Civ. P. 12(e).

This 5th of December, 2016.

GREENBERG TRAURIG

*/s/ Janna Nugent*
Ernest L. Greer
Georgia Bar No. 309180
greere@gtlaw.com
Mark G. Trigg
Georgia Bar No. 716295
triggm@gtlaw.com
Janna Nugent
Georgia Bar No. 940465
nugentj@gtlaw.com
Counsel for Defendants

Terminus 200
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia  30305
Telephone:  (678) 553-2100
Facsimile:  (678) 553-2212

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FIVE ON FIFTY, LLC; GATE INDUSTRIES, LLC; and SOUTHERN FILM REGIONAL CENTER-ATLANTA, LLC, <br><br> Plaintiffs, <br><br> -vs.- <br><br> F. RAYMON BEAN; DAVID SHAFFER; JEFFREY KUEHR; GREENFUELS ENERGY, LLC; GEORGIA RENEWABLE POWER, LLC; GRP FRANKLIN, LLC; GRP MADISON, LLC; GRP NORTH CAROLINA, LLC; NORTH CAROLINA RENEWABLE POWER-LUMBERTON, LLC; and NORTH CAROLINA RENEWABLE POWER-ELIZABETHTOWN, LLC, <br><br> Defendants. | Civil Action No. 1:16-cv-3690-TCB |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2016 the foregoing document titled

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,**

**FOR A MORE DEFINITE STATEMENT** was filed with the Court through its

CM/ECF service which shall send electronic notice of said filing to the following

attorneys of record:

Thomas C. Grant, Esq.
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
1180 Peachtree Street, N.E.
Suite 2900
Atlanta, Georgia 30309

*/s/ Janna Nugent*
Janna Nugent
Georgia Bar No. 940465
Counsel for Defendants

*ATL 21716140v1*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FIVE ON FIFTY, LLC; GATE INDUSTRIES, LLC; and SOUTHERN FILM REGIONAL CENTER-ATLANTA, LLC, <br><br> Plaintiffs, <br><br> -vs.- <br> F. RAYMON BEAN; DAVID SHAFFER; JEFFREY KUEHR; GREENFUELS ENERGY, LLC; GEORGIA RENEWABLE POWER, LLC; GRP FRANKLIN, LLC; GRP MADISON, LLC; GRP NORTH CAROLINA, LLC; NORTH CAROLINA RENEWABLE POWER-LUMBERTON, LLC; and NORTH CAROLINA RENEWABLE POWER-ELIZABETHTOWN, LLC, <br><br> Defendants. | Civil Action No. <br> 1:16-cv-3690-TCB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE <u>STATEMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ................................................2

ARGUMENT AND CITATION OF AUTHORITY ................................................4

I.   THE COURT LACKS PERSONAL JURISDICTION OVER THE NORTH CAROLINA AND INDIVIDUAL DEFENDANTS. ................................4

II.  PLAINTIFFS' COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING AND SHOULD BE DISMISSED. ................................7

III. PLAINTIFFS FAIL TO SATISFY RULE 9(b) WITH RESPECT TO THEIR RICO, FRAUD, AND NEGLIGENT MISREPRESENTATION CLAIMS. ................................9

IV.  PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ................................12

     A.    Plaintiffs Fail to State a RICO Claim Under Georgia and Federal Law. ................................13

          1.    Plaintiffs fail to allege a compensable injury. ................................14

          2.    Plaintiffs fail to allege a violation under 18 U.S.C. § 1962 or Georgia law. ................................17

               (a)    Plaintiffs do not allege an act of "racketeering activity." ................................18

               (b)    Plaintiffs do not allege a "pattern" of racketeering activity. ................................24

               (c)    Plaintiffs do not allege an "enterprise." ................................27

               (d)    Plaintiffs do not allege a "conspiracy." ................................30

          3.    Plaintiffs fail to allege proximate cause. ................................32

     B.    Plaintiffs Fail to State a Claim for Fraud and Negligent Misrepresentation. ................................33

     C.    Plaintiffs Fail to State a Claim for Breach of Contract. ................................37

     D.    Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing. ................................42

E.    Plaintiffs Fail to State a Claim for *Quantum Meruit* or Unjust Enrichment. ..........................................................................43

CONCLUSION .......................................................................................45

# TABLE OF AUTHORITIES

**Cases**

Adkins v. Cagle Foods JV, LLC,
    411 F.3d 1320 (11th Cir. 2005) ...................................................38, 42

Ageloff v. Kiley,
    318 F. Supp. 2d 1157 (S.D. Fla. 2004) ...............................................28

Alan's of Atlanta, Inc. v. Minolta Corp.,
    903 F.2d 1414 (11th Cir. 1990) ...........................................................43

Aldridge v. Lily-Tulip, Inc.,
    953 F.2d 587 (11th Cir. 1992) .............................................................26

Allstate Ins. Co. v. Sutton,
    290 Ga. App. 154, 658 S.E.2d 909 (2008) ...................................23, 35

Almanza v. United Airlines, Inc.,
    162 F. Supp. 3d 1341 (S.D. Ga. 2016) ...............................................31

Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.,
    426 F. Supp. 2d 1356 (N.D. Ga. 2006) ..............................................34

Am. Dental Ass'n v. Cigna Corp.,
    605 F.3d 1283 (11th Cir. 2010) .......................................10, 18, 24, 31

Am. United Life Ins. Co. v. Martinez,
    480 F.3d 1043 (11th Cir. 2007) ..........................................................19

Ambrosia Coal & Constr. Co. v. Pages Morales,
    482 F.3d 1309 (11th Cir. 2007) .............................................................9

Anza v. Ideal Steel Supply Corp.,
    547 U.S. 451 (2006).............................................................................32

Barnes v. Burger King Corp.,
    932 F. Supp. 1420 (S.D. Fla. 1996) .............................................38, 42

Beck v. Prupis,
    162 F.3d 1090 (11th Cir. 1998), aff'd, 529 U.S. 494 (2000) .............30

Beckwith v. Bellsouth Telecomms., Inc.,
    146 F. App'x 368 (11th Cir. 2005)..................................................7, 8

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007).................................................................31

Bowen & Bowen Constr. Co. v. Fowler,
    265 Ga. App. 274, 593 S.E.2d 668 (2004) ........................................34

Boyle v. United States,
    556 U.S. 938 (2009)...............................................................28

Brady v. State,
    267 Ga. App. 351, 599 S.E.2d 313 (2004) ........................................19

Brooks v. Blue Cross & Blue Shield of Fla., Inc.,
    116 F.3d 1364 (11th Cir. 1997) .................................................11

Burchett v. Lagi,
    No. 1:11-CV-2379-TWT, 2012 WL 3042984 (N.D. Ga. July 25,
    2012) .......................................................................28, 29

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)................................................................6

Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.,
    139 F.3d 1396 (11th Cir. 1998) .................................................44

Cedric Kushner Promotions, Ltd. v. King,
    533 U.S. 158 (2001)...............................................................28

Charter Med. Mgmt. Co. v. Ware Manor, Inc.,
    159 Ga. App. 378, 283 S.E.2d 330 (1981) ........................................36

U.S. ex rel. Clausen v. Lab. Corp. of Am.,
    290 F.3d 1301 (11th Cir. 2002) .................................................10

Cleveland v. United States,
    531 U.S. 12 (2000)................................................................24

Corcel Corp. v. Ferguson Enters., Inc.,
    551 F. App'x 571 (11th Cir. 2014) ..............................................32

Ellerbee v. State,
    256 Ga. App. 848, 569 S.E.2d 902 (2002) ........................................19

Ferrell v. Durbin,
    311 F. App'x 253 (11th Cir. 2009)............................................26, 27

First Data POS, Inc. v. Willis,
    273 Ga. 792, 546 S.E.2d 781 (2001) ................................................................37

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994) ...........................................................................15

FL Receivables Trust 2002-A v. Bagga,
    No. CIV.A. 03-CV-5108, 2005 WL 563535 (E.D. Pa. Mar. 8,
    2005) ................................................................................................................16

Fleischhauer v. Feltner,
    879 F.2d 1290 (6th Cir. 1989) ......................................................................15

Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki,
    Mortensen & Lange,
    19 F.3d 624 (11th Cir. 1994) ..........................................................................6

Frank Briscoe Co. v. Georgia Sprinkler Co.,
    713 F.2d 1500 (11th Cir. 1983) ....................................................................34

Functional Prods. Trading, S.A. v. JITC, LLC,
    No. 1:12-CV-0355-WSD, 2014 WL 3749213 (N.D. Ga. July 29,
    2014) ................................................................................................................27

Gilbert v. Monaco Coach Corp.,
    352 F. Supp. 2d 1323 (N.D. Ga. 2004) ........................................................34

H.J. Inc. v. Nw. Bell Tel. Co.,
    492 U.S. 229 (1989) .......................................................................................25

Harmon v. Innomed Techs., Inc.,
    309 Ga. App. 265, 709 S.E.2d 888 (2011) ...................................................42

Heinhold v. Perlstein,
    651 F. Supp. 1410 (E.D. Pa. 1987) ..............................................................15

Hemi Grp., LLC v. City of New York, N.Y.,
    559 U.S. 1 (2010) ...........................................................................................32

Innocent v. Wachovia Mortg. Corp.,
    No. 1:10-CV-03799-RWS, 2012 WL 602129 (N.D. Ga. Feb. 22,
    2012) ..................................................................................................................7

Ironworkers Local Union 68 v. AstraZeneca Pharm., LP,
    634 F.3d 1352 (11th Cir. 2011) ....................................................................14

Ivar v. Elk River Partners, LLC,
    705 F. Supp. 2d 1220 (D. Colo. 2010)................................................15

Jackson v. BellSouth Telecomms.,
    372 F.3d 1250 (11th Cir. 2004) ...........................................25, 26, 31

B.L.E. ex rel. Jefferson v. Georgia,
    335 F. App'x 962 (11th Cir. 2009) .....................................................7

Liberty v. Storage Trust Props., L.P.,
    267 Ga. App. 905, 600 S.E.2d 841 (2004) ...................................37, 40

Longino v. Bank of Ellijay,
    228 Ga. App. 37, 491 S.E.2d 81 (1997) ............................................13

Martin v. Pierce,
    140 Ga. App. 897, 32 S.E.2d 170 (1977) ..........................................38

Mathis v. State,
    161 Ga. App. 251, 288 S.E.2d 317 (1982) ........................................19

McCulloch v. PNC Bank Inc.,
    298 F.3d 1217 (11th Cir. 2002) .......................................................17

McLaughlin v. Am. Tobacco Co.,
    522 F.3d 215 (2d Cir. 2008) ...........................................................15

Miccosukee Tribe of Indians of Fla. v. Cypress,
    814 F.3d 1202 (11th Cir. 2015) .......................................................11

O'Connell v. Cora Bett Thomas Realty, Inc.,
    254 Ga. App. 311, 563 S.E.2d 167 (2002) ........................................38

O'Malley v. O'Neill,
    887 F.2d 1557 (11th Cir. 1989) .......................................................31

Open Rivers Media Grp., Inc. v. S. Film Reg'l Ctr. LLC,
    No. 1:15-cv-00724-SCJ (N.D. Ga.) (March 31, 2016 Order) ........................1, 12

Pelletier v. Zweifel,
    921 F.2d 1465 (11th Cir. 1991) .......................................................18

Perry Golf Course Dev., LLC v. Hous. Auth. of City of Atlanta,
    294 Ga. App. 387, 670 S.E.2d 171 (2008) ........................................43

PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.,
    598 F.3d 802 (11th Cir. 2010) ...........................................................7

Ray v. Spirit Airlines, Inc.,
    836 F.3d 1340 (11th Cir. 2016) ...................................................28, 33

Reg'l Pacesetters, Inc. v. Halpern Enters. Inc.,
    165 Ga. App. 777, 300 S.E.2d 180 (1983) .......................................44

Regenicin, Inc. v. Lonza Walkersville, Inc.,
    997 F. Supp. 2d 1304 (N.D. Ga. 2014)................................................9

Reiter v. Sonotone Corp.,
    442 U.S. 330 (1979).........................................................................14

Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,
    119 F.3d 935 (11th Cir. 1997) ....................................................18, 30

Reves v. Ernst & Young,
    507 U.S. 170 (1993).........................................................................29

Roberts v. The Scott Fetzer Co.,
    No. 4:07-CV-80 (CDL), 2010 WL 3937312 (M.D. Ga. Sept. 30,
    2010) ...............................................................................................15

Scott v. State,
    277 Ga. App. 876, 627 S.E.2d 904 (2006) .......................................19

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985).........................................................................14

Simpson v. Sanderson Farms, Inc.,
    744 F.3d 702 (11th Cir. 2014) ....................................................13, 14

Smith Serv. Oil Co. v. Parker,
    250 Ga. App. 270, 549 S.E.2d 485 (2001) .......................................44

Smith v. Morris, Manning & Martin, LLP,
    293 Ga. App. 153, 666 S.E.2d 683 (2008) .......................................13

Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,
    305 F.3d 1293 (11th Cir. 2002) ..........................................................7

Stuart Enters. Int'l, Inc. v. Peykan, Inc.,
    252 Ga. App. 231, 555 S.E.2d 881 (2001) ..................................42, 43

T-12 Entm't, LLC v. Young Kings Enters., Inc.,
    36 F. Supp. 3d 1380 (N.D. Ga. 2014)..................................................8

Tart v. IMV Energy Sys. of Am., Inc.,
   374 F. Supp. 2d 1172 (N.D. Ga. 2005)................................................................43

Taylor v. Appleton,
   30 F.3d 1365 (11th Cir. 1994) .............................................................................5

Taylor v. Bear Stearns & Co.,
   572 F. Supp. 667 (N.D. Ga. 1983).......................................................................1

TechBios, Inc. v. Champagne,
   301 Ga. App. 592, 688 S.E.2d 378 (2009) ........................................................38

Thompson v. Enter. Leasing Co. of Ga.,
   240 Ga. App. 222, 522 S.E.2d 670 (1999) ........................................................41

Tidikis v. Network for Med. Commc'ns & Research LLC,
   274 Ga. App. 807, 619 S.E.2d 481 (2005) ........................................................45

Tri-State Consumer Ins. Co., Inc. v. LexisNexis Risk Solutions Inc.,
   823 F. Supp. 2d 1306 (N.D. Ga. 2011)...............................................................35

In re Tri-State Crematory Litig.,
   215 F.R.D. 660 (N.D. Ga. 2003) ........................................................................34

Tucker v. Nat'l Linen Serv. Corp.,
   200 F.2d 858 (5th Cir. 1953) ..............................................................................23

United Cos. Lending Corp. v. Peacock,
   475 S.E.2d 601, 475 S.E.2d 601 (1996) ............................................................13

United States v. Browne,
   505 F.3d 1229 (11th Cir. 2007) ..........................................................................25

United States v. Maxwell,
   579 F.3d 1282 (11th Cir. 2009) ..........................................................................19

Williams Gen. Corp. v. Stone,
   279 Ga. 428, 614 S.E.2d 758 (2005) ...........................................................17, 32

**Statutes**

18 U.S.C. § 1961(1) .................................................................................................18

18 U.S.C. § 1961(5) .................................................................................................24

18 U.S.C. § 1962.....................................................................................................13

18 U.S.C. § 1962(a) ...................................................................................31

18 U.S.C. § 1962(b) .............................................................................13, 31

18 U.S.C. § 1962(c) .......................................................................13, 28, 31

18 U.S.C. § 1962(d) .............................................................................13, 17

28 U.S.C. § 1332 ..........................................................................................5

O.C.G.A. § 16-4-4(a) .................................................................................13

O.C.G.A. § 16-4-4(b) .................................................................................13

O.C.G.A. § 16-8-3 ..........................................................................19, 23, 24

O.C.G.A. § 16-14-3(8)(A) ..........................................................................25

O.C.G.A. § 16-14-3(9)(A)(i)-(xl) ...............................................................18

O.C.G.A. § 16-14-4(a) ...............................................................................17

O.C.G.A. § 16-14-4(b) ...............................................................................17

O.C.G.A. § 16-14-6(c) ...............................................................................13

**Rules**

Fed. R. Civ. P. 8 ..............................................................................4, 7, 8, 9

Fed. R. Civ. P. 9(b) ........................................ 1, 2, 4, 9, 10, 11, 12, 27

Fed. R. Civ. P. 12(b)(2) ................................................................................4

Fed. R. Civ. P. 12(b)(6) ..........................................................................4, 12

Fed. R. Civ. P. 12(e) ..................................................................................12

# INTRODUCTION

Plaintiffs filed this lawsuit to sully the reputation of certain individuals and the companies for which they work and, presumably, extort settlement for unmeritorious claims by capitalizing on the *in terrorem* effect associated with RICO and fraud.  As this Court has noted, "the mere invocation of the [RICO] statute has such an *in terrorem* effect that it would be unconscionable to allow it to linger in a suit and generate suspicion and unfavorable opinion of the putative defendant unless there is some articulable factual basis which, if true, would warrant recovery under the statute." Taylor v. Bear Stearns & Co., 572 F. Supp. 667, 682 (N.D. Ga. 1983) (Judge Forrester).

If any "articulable factual basis" for recovery existed in this action, Plaintiffs would have pled it.  They are well acquainted with the risks of shotgun pleadings and the failure to meet heightened pleading standards.  Just months before filing the Complaint, Plaintiffs' counsel argued for dismissal of a remarkably similar complaint—one which alleged RICO, fraud, and other tort claims against Plaintiff Gate Industries, LLC (Gate), its Managing Member, Dominic Applegate (Applegate), and others—on the basis it constituted an impermissible shotgun pleading and failed to sufficiently allege multiple elements of a RICO claim. See Open Rivers Media Grp., Inc. v. S. Film Reg'l Ctr. LLC, No. 1:15-cv-00724-SCJ

(N.D. Ga.) (May 31, 2016 Order, attached hereto as Exhibit A) (Judge Jones grants motion to dismiss on the basis of shotgun pleading and failure to satisfy Rule 9(b)). Plaintiffs' Complaint suffers from the same deficiencies recognized in <u>Open Rivers</u>, among other deficiencies, and should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Accepting Plaintiffs' allegations as true for purposes of this motion only, Georgia Renewable Power, LLC (GRP) is a company that specializes in the production of environmentally sustainable energy through the use of renewable resources. Plaintiffs allege GreenFuels Energy, Inc. (GreenFuels) owns GRP, and F. Raymon Bean (Bean) owns GreenFuels. (Compl. ¶¶ 19-20.) Plaintiffs further allege Defendants were involved in two power plants in Georgia and two power plants in North Carolina (collectively, the "Projects"), seeking to modernize them and produce renewable energy from fuels such as wood pulp and chicken waste. (<u>Id.</u> at ¶¶ 29-30.) If successful, these Projects would generate revenue by selling electrical power to utility companies. (<u>Id.</u> at ¶ 62.)

As a part of its efforts to raise capital for the Projects, GRP considered using the "EB-5" Immigrant Investor Program administered by the United States Citizenship and Immigration Services ("USCIS"), through which foreign investors can obtain visas to live and work in the United States in connection with their

investment in a qualified project.  (Id. at ¶ 33, 37.)  To assist with this potential financing, in July 2014, GRP entered into four one-year "Engagement Agreements" with Plaintiffs Gate and Southern Film Regional Center-Atlanta, LLC (Southern Film).  (Id. at ¶ 50)  Pursuant to the terms of these Engagement Agreements, Gate and Southern Film would assist in the preparation of EB-5 application materials.  (Id. at ¶¶ 38-39; see generally id. at Exs. A-D.)  The Engagement Agreements expired by their terms on June 1, 2015.  (Id.)

In 2015, Applegate, as the Managing Member of Southern Film and Principal of Gate, presented a "Term Sheet" to GRP, which proposed a non-binding framework of terms applicable to future loans, if and when the Projects reached the funding stage.[1]  (See generally id. at Ex. F.)  However, before any investments were made or funding secured for any of the Projects, Defendant David Shaffer (Shaffer) communicated the decision to cease pursuit of potential EB-5 financing to Applegate via a letter dated March 29, 2016.  (Id. at Ex. E.)

In their Complaint, Plaintiffs accuse Defendants of engaging in an **organized criminal scheme** to defraud Plaintiffs and others into investing or seeking investment in the Projects through EB-5 and other means of financing.

---

[1] It is unclear why Five on Fifty, LLC is a named Plaintiff in this case.  The only reference to Five on Fifty, LLC is in Paragraph 56 of the Complaint, which refers to a Project Checklist attached to the Term Sheet, in which Five on Fifty, LLC is referred to as the "NCE manager (fund manager)."  (Id. at ¶ 56, Ex. F, p. 5.)

(Id. at ¶ 93.)   Plaintiffs generally contend Defendants made numerous misrepresentations or material omissions regarding information to be included in EB-5 application materials over the course of the parties' dealings.   Defendants vehemently deny these baseless and inflammatory allegations.

## ARGUMENT AND CITATION OF AUTHORITY

Plaintiffs' Complaint is subject to dismissal for at least four reasons.   **First**, Plaintiffs' claims against GRP North Carolina, LLC, North Carolina Renewable Power-Lumberton, LLC, and North Carolina Renewable Power-Elizabethtown (collectively, North Carolina Defendants), as well as Defendants Bean, Shaffer, and Kuehr (collectively, the individual Defendants) are subject to dismissal under Fed. R. Civ. P. 12(b)(2) because this Court does not have personal jurisdiction over them based on the allegations in the Complaint.   **Second**, Plaintiffs' Complaint constitutes an impermissible shotgun pleading under Fed. R. Civ. P. 8.   **Third**, Plaintiffs fail to allege with particularity the circumstances upon which they base their RICO, fraud, and negligent misrepresentation claims as required by Fed. R. Civ. P. 9(b).   **Fourth**, Plaintiffs fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER THE NORTH CAROLINA AND INDIVIDUAL DEFENDANTS.

In their Complaint, Plaintiffs contend this Court has diversity jurisdiction

under 28 U.S.C. § 1332.   (Compl. ¶ 25.)   Because Plaintiffs assert diversity jurisdiction, they have the burden to "affirmatively allege facts demonstrating the existence of jurisdiction."   <u>Taylor v. Appleton</u>, 30 F.3d 1365, 1367 (11th Cir. 1994).  Plaintiffs' allegations fall short in establishing the Court's jurisdiction as to the North Carolina and individual Defendants.

Plaintiffs' only ostensible reference to the Court's jurisdiction over the North Carolina Defendants is contained in Paragraph 28 of the Complaint. Specifically, Plaintiffs allege:

> numerous of the Defendants **(individually and through their affiliates)** are parties to four separate "Engagement Agreements" (one for each EB-5 power plant project), each of which contains a venue and choice of law provision which states that Georgia law applies, and that the parties have agreed that "[a] suit, action or proceeding arising out of or relating to [the] Agreement may be maintained in any court of competent jurisdiction in Fulton County, Georgia, and each party waives all objections to such jurisdiction and venue."

(<u>Id.</u> at ¶ 28 (emphasis added)).  In other words, Plaintiffs rely entirely on the terms of the Engagement Agreements to establish jurisdiction over the North Carolina Defendants.  Notably, none of the North Carolina Defendants are parties to the Engagement Agreements.  (<u>See</u> Compl. at Exs. A-D).  Accordingly, Plaintiffs have not alleged sufficient facts to establish personal jurisdiction over the North Carolina Defendants.

Plaintiffs likewise fail to establish jurisdiction over the individual Defendants. It is well settled that a nonresident defendant may be subject to specific jurisdiction in a particular forum only when he has purposefully established minimum contacts with the forum state and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange, 19 F.3d 624, 627 (11th Cir. 1994). Plaintiffs have not alleged any facts to satisfy either prong of this test. Although Plaintiffs allege the individual Defendants made affirmative misrepresentations or omissions to Plaintiffs, they do not specifically state that these alleged misrepresentations or omissions were directed towards a Georgia entity or related to a Georgia project. Instead, Plaintiffs allege that "[m]any of the parties' communications occurred via interstate email, mail, and telephone calls, given that Defendants predominantly work out of Alabama, that Plaintiffs operated out of Georgia and South Carolina, and that the subject power plants are located in Georgia and in North Carolina." (Compl. ¶ 34.) These allegations do not establish minimum contacts, much less show that personal jurisdiction over the individual Defendants "would comport with fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).

## II.   PLAINTIFFS' COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING AND SHOULD BE DISMISSED.

Plaintiffs' Complaint is an impermissible "shotgun pleading" that "fail[s] to identify claims with sufficient clarity to enable [Defendants] to frame a responsive pleading." Beckwith v. Bellsouth Telecomms., Inc., 146 F. App'x 368, 371 (11th Cir. 2005). Shotgun pleadings violate Rule 8 by "contain[ing] several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).

The Eleventh Circuit has condemned the use of such pleadings because they impede "'the administration of the district courts' civil docket' and require the court to sift through rambling and often incomprehensible allegations in an attempt to separate the meritorious claims from the unmeritorious, resulting in a 'massive waste of judicial and private resources.'" Innocent v. Wachovia Mortg. Corp., No. 1:10-CV-03799-RWS, 2012 WL 602129, at *1 (N.D. Ga. Feb. 22, 2012) (Judge Story) (quoting PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 806 n.4 (11th Cir. 2010)). Further, the Eleventh Circuit has "specifically instructed district courts to prohibit, as fatally defective, shotgun pleadings." B.L.E. ex rel. Jefferson v. Georgia, 335 F. App'x 962, 963 (11th Cir. 2009).

Disregarding Rule 8, each of Plaintiffs' 12 counts adopts and incorporates by reference prior allegations in the Complaint: **6 counts incorporate all prior allegations; the other 6 counts each incorporate at least 100 previously-stated paragraphs**.[2] Consequently, allegations that may be material to one count, but not others, are made a part of each count, forcing Defendants to determine which facts purportedly support each theory of recovery.  Beckwith, 146 F. App'x at 372 (11th Cir. 2005).  For this reason alone, the Complaint should be dismissed.

Additionally, this Court has also characterized as shotgun pleadings those which indiscriminately assert claims against multiple defendants collectively and fail "to specify which defendant is responsible for each act alleged."  T-12 Entm't, LLC v. Young Kings Enters., Inc., 36 F. Supp. 3d 1380, 1387 (N.D. Ga. 2014) (Judge Batten).  Plaintiffs' Complaint suffers from this deficiency as well.  Despite naming 10 Defendants, including 3 individual Defendants and 7 corporate entities, the majority of Plaintiffs' allegations and claims are asserted against "Defendants" collectively.  (See, e.g., Compl. ¶¶ 5-8, 69-70, 79-81, 83.)  This failure to specify

---

[2] Counts I, II, III, IV, V and XII incorporate all previous paragraphs by reference. Counts VI, VII and XI incorporate Paragraphs 1 through 112 by reference, comprised of the entire Introduction and Background Facts sections, as well as the allegations of Counts I through III.  Counts VIII, IX and X incorporate Paragraphs 1 through 100 by reference, comprised of the entire Introduction and Background Facts sections, as well as the allegations of Count I.

which Defendant is responsible for each act alleged serves as an independent basis for dismissal.[3]

## III.   PLAINTIFFS FAIL TO SATISFY RULE 9(b) WITH RESPECT TO THEIR RICO, FRAUD, AND NEGLIGENT MISREPRESENTATION CLAIMS.

In addition to being deficient under Rule 8, the Complaint also fails to satisfy the heightened pleading standard under Fed. R. Civ. P. 9(b) with regard to Plaintiffs' RICO, fraud, and negligent misrepresentation claims.   Under Fed. R. Civ. P. 9(b), a complaint alleging "fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake."   This heightened pleading standard applies not only to fraud claims, but to RICO and negligent misrepresentation claims as well.   See Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007) (applying Rule 9(b) to civil RICO claims); Regenicin, Inc. v. Lonza Walkersville, Inc., 997 F. Supp. 2d 1304, 1314 (N.D. Ga. 2014) (Judge Batten) (applying Rule 9(b) to negligent misrepresentation claim).

To satisfy the particularity requirement, a plaintiff must set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and

---

[3] Plaintiffs likewise refer to themselves in a collective manner throughout the Complaint, further inhibiting Defendants' ability to adequately respond or defend against the claims asserted in this case.

person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1291 (11th Cir. 2010) (citation and internal quotations omitted).  Where the complaint fails to satisfy any of these requirements under Rule 9(b), dismissal is appropriate.  <u>U.S. ex rel. Clausen v. Lab. Corp. of Am.</u>, 290 F.3d 1301, 1310 (11th Cir. 2002) ("[T]his Court has endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards.").

Plaintiffs' Complaint fails to meet the Rule 9(b) requirements in two critical respects.  First, Plaintiffs' allegations of fraudulent conduct are stated in a fatally general fashion.  The nearly 100 paragraphs of "Introduction" and "Background Facts" contain legally irrelevant and conclusory allegations unsubstantiated by factual detail.  For example, Plaintiffs generally claim that Defendants: (1) "engaged in one of many interstate telephone calls . . . during which Defendants continued to discuss and supply data for the applications for the Projects, much of which was inaccurate and thus misstated the profitability and job-creation of the Projects" (Compl. ¶ 97.l.); and (2) misrepresented "the amount of electrical power and profits that each of the Projects would produce."  (<u>Id.</u> at ¶ 122.)  However, Plaintiffs fail to provide any factual support for these allegations as required under Fed. R. Civ. P. 9(b), such as when statements containing a

misrepresentation were made, the specific content of the statements and how that content misled Plaintiffs, and what Defendants gained by making such statements. See Miccosukee Tribe of Indians of Fla. v. Cypress, 814 F.3d 1202, 1212 (11th Cir. 2015) (finding general allegations that attorneys billed for "illegitimate or fictitious services," "received payment at inflated rates," and "provided services under auspices of fictitious loan arrangements" failed to satisfy Rule 9(b) because there were no facts about what services were legitimate versus illegitimate, what rates were inflated, and what services comprised part of the alleged scheme).

Second, as discussed supra, all of the claims and the majority of Plaintiffs' allegations are asserted against "Defendants" collectively.  For instance, Plaintiffs allege that "**Defendants** ultimately decided (on their own and without promptly informing Plaintiffs) against replacing [a] boiler, as initially planned. . . . [and] did not promptly communicate this decision to Plaintiffs" (Compl. ¶¶ 69-70 (emphasis added).)  This failure to differentiate among Defendants prevents each Defendant from receiving adequate notice of the allegations it must answer and is improper under Rule 9(b).  See, e.g., Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1381 (11th Cir. 1997).

Although dismissal of a complaint for failure to satisfy the requirements of Rule 9(b) is a severe remedy, it is particularly appropriate in this action because

Plaintiffs and their counsel knowingly disregarded the heightened pleading standard addressed just months earlier in the Court's Order, which dismissed remarkably similar claims. See Open Rivers Media Grp., Inc., No. 1:15-cv-00724-SCJ (N.D. Ga.) (March 31, 2016 Order) (Judge Jones). Plaintiffs' failure to plead with particularity is telling not only of Plaintiffs' motive, but of their inability to plead and prove a set of facts that would entitle them to relief. Had Plaintiffs been aware of such facts, they presumably would have included them in the Complaint. Because they failed to do so, Counts I through VII of Plaintiffs' Complaint should be dismissed.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Although Plaintiffs' Complaint constitutes an impermissible shotgun pleading and, where applicable, fails to satisfy the requirements under Rule 9(b),[4] the Court should also dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Under Fed. R. Civ. P. 12(b)(6), a complaint is subject to dismissal where it appears beyond doubt that no set of facts could support the plaintiff's claim for relief. As addressed below, the Complaint fails to state a claim under the federal and Georgia RICO statutes (Counts I through V). It likewise fails to state claims for fraud

---

[4] To the extent the Court does not dismiss Plaintiffs' Complaint in its entirety, entry of an Order requiring a more definite statement as to the surviving claims and parties pursuant to Fed. R. Civ. P. 12(e) is warranted.

(Count VI), negligent misrepresentation (Count VII), breach of contract (Count VIII), breach of implied covenant of good faith and fair dealing (Count IX), and unjust enrichment/quantum meruit (Count X).[5]

### A.     Plaintiffs Fail to State a RICO Claim Under Georgia and Federal Law.

In Counts I through V of the Complaint, Plaintiffs purport to assert claims under various federal and Georgia RICO statutes, including 18 U.S.C. § 1962(b), (c), and (d), and O.C.G.A. § 16-4-4(a) and (b), respectively.   To prevail on the federal claims, Plaintiffs must establish three essential elements: (1) that they suffered a cognizable injury to business or property; (2) a violation under 18 U.S.C. § 1962; and (3) that the alleged injury was proximately caused by the purported violation(s) of 18 U.S.C. § 1962.   Simpson v. Sanderson Farms, Inc., 744 F.3d 702, 705 (11th Cir. 2014).[6]   As addressed below, Plaintiffs fail to allege

---

[5] Because Plaintiffs' claims under the federal and Georgia RICO statutes fail as a matter of law, their claim for treble damages, punitive damages and attorney's fees likewise fail since those claims are dependent on an award on the underlying claims.   United Cos. Lending Corp. v. Peacock, 475 S.E.2d 601, 602, 475 S.E.2d 601, 602 (1996) ("A prerequisite to any award of attorney fees under O.C.G.A. § 13-6-11 is the award of damages or other relief on the underlying claim.").

[6] Likewise, a civil cause of action under Georgia's RICO Act is available to "[a]ny person who is injured by reason of any violation of Code Section 16-14-4." O.C.G.A. § 16-14-6(c).   Standing under Georgia's RICO Act requires "a direct nexus between at least one of the predicate acts listed under the RICO Act and the injury [a plaintiff] purportedly sustained."   Smith v. Morris, Manning & Martin, LLP, 293 Ga. App. 153, 165, 666 S.E.2d 683, 695 (2008); Longino v. Bank of

facts to satisfy any of these essential elements, thereby requiring dismissal of Counts I through V.

### 1.    Plaintiffs fail to allege a compensable injury.

To have standing to assert a federal RICO claim, a plaintiff must assert a cognizable injury to business or property.  Only damages that are concrete or quantifiable are recoverable under civil RICO.  Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1361 (11th Cir. 2011) ("A plaintiff asserting a claim under § 1964(c) of RICO must allege economic injury arising from the defendant's actions.").  "Although the Supreme Court has demanded that 'RICO is to be read broadly,' the injury to business or property limitation on RICO standing has a 'restrictive significance.'" Id. (citation omitted) (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979)).  This limitation "helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." Id.

Among the damages not recoverable under RICO are intangible, expectancy, or benefit of the bargain damages.  Simpson, 744 F.3d at 712 (affirming dismissal of RICO claim where plaintiffs failed to adequately allege injury of **actually**

---

Ellijay, 228 Ga. App. 37, 40–41, 491 S.E.2d 81, 85 (1997) (individual's RICO injuries "'must flow from the commission of the predicate acts'") (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) (internal quotations omitted)).

depressed wages resulting from defendant's illegal hiring practices). The unavailability of such damages "follows from the text of RICO, which compensates only for injury to 'business or property.'" McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 228–29 (2d Cir. 2008). A party's expectation cannot constitute "business or property" under RICO. See, e.g., Roberts v. The Scott Fetzer Co., No. 4:07-CV-80 (CDL), 2010 WL 3937312 (M.D. Ga. Sept. 30, 2010) (holding that "benefit of the bargain" damages resulting from consumer fraud are unavailable under RICO).[7]

Applying these principles, Plaintiffs RICO claims fail because they do not allege that they suffered an actionable, concrete financial loss. Rather, Plaintiffs assert in conclusory fashion that they are entitled to $9 million in damages as a proximate result of Defendants' alleged conduct. (Compl. ¶¶ 100, 108, 112, 115.) The basis for this calculation appears in Exhibit "T" to the Complaint, which is an

---

[7] This rule is consistently applied in federal courts throughout the country. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 765, 768 (2d Cir. 1994) (holding bank facing additional risk of loss did not suffer actual injury because damages, if any, were yet to be determined); Fleischhauer v. Feltner, 879 F.2d 1290, 1300 (6th Cir. 1989) (RICO plaintiffs not entitled to award of expectancy or "benefit of the bargain" damages); Ivar v. Elk River Partners, LLC, 705 F. Supp. 2d 1220, 1234–35 (D. Colo. 2010) ("Plaintiffs' asserted state law property interest consists of an intangible 'lost bargain.' This is not the type of concrete loss that numerous courts have found necessary to support a RICO injury."); Heinhold v. Perlstein, 651 F. Supp. 1410, 1412 (E.D. Pa. 1987) (holding plaintiff lacks standing when "the only property to which a plaintiff alleges injury is an expectation interest that would not have existed but for the alleged RICO violation").

April 15, 2016 letter from Plaintiffs' counsel to Defendant Bean.   On Page 9,

Plaintiffs' counsel lists the following payments Gate purportedly would have

received if the Projects had been completed:

- 2.5% interest on the $48,000,000.00 loan for a period of 5-7 years: *$6,000,000.00 - $8,880,000.00*
- Administration fee ($5,000.00 per investor): *$480,000.00*
- Origination fee: *$480,000.00*
- Total: *$7,900,000.00 - $9,840,000.00*

(Id.)  These are nothing more than expectancy damages as funding for the Projects

was not secured or received before GRP abandoned its efforts to obtain EB-5

financing.  Plaintiffs even admit "it was the funding phase of each Project through

which Plaintiffs would receive substantial payments, including a percentage of all

investment and related fees for work regarding the financing. . . ."  (Compl. ¶ 60).

Because Plaintiffs do not allege a concrete financial loss, but instead seek injuries

that are contingent on future events, Plaintiffs have no standing to sue under RICO.

FL Receivables Trust 2002-A v. Bagga, No. CIV.A. 03-CV-5108, 2005 WL

563535, at *4 (E.D. Pa. Mar. 8, 2005) ("Moreover, the *Maio* Court left no doubt

that an injury that is speculative or contingent on future events does not confer

RICO standing.")[8]

---

[8] The same is true to the extent Plaintiffs claim their RICO injury is based on losses
suffered as a result of forbearance of other work (i.e., because of Defendant

### 2. Plaintiffs fail to allege a violation under 18 U.S.C. § 1962 or Georgia law.

"To state a RICO claim [under federal law], a plaintiff must plead (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) . . . maintains an interest in [§ 1962(b)], or participates in [§ 1962(c)] (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." McCulloch v. PNC Bank Inc., 298 F.3d 1217, 1225 (11th Cir. 2002).[9]   Georgia RICO likewise prohibits any person from (1) using a "pattern of racketeering activity" or the proceeds thereof to acquire or maintain any interest in or control of an enterprise or any property, real or personal, including money, or (2) if "employed by or associated with" an enterprise, from conducting or participating in that enterprise through a pattern of racketeering activity. O.C.G.A. § 16-14-4(a), (b).[10]   Here, Plaintiffs fail to allege:

---

Shaffer's alleged request that Plaintiffs' work on Defendants' Projects exclusively for one year).  Such damages are not a concrete financial loss but are instead contingent upon future events.

[9] Plaintiffs' RICO conspiracy claim under 18 U.S.C. 1962(d) (Count III), and the deficiencies associated therewith, are discussed infra.  Plaintiffs do not allege a conspiracy claim under the Georgia RICO statute in their Complaint.

[10] The Georgia RICO Act is modeled on the federal RICO statute and, in the absence of Georgia authority, Georgia courts often look to federal decisions for guidance on the interpretation of similar provisions of the Georgia RICO Act. Williams Gen. Corp. v. Stone, 279 Ga. 428, 430, 614 S.E.2d 758, 760 (2005).

(a) "racketeering activity"; (b) that Defendants engaged in a "pattern" of such racketeering activity; (c) the existence of an "enterprise"; and (d) a "conspiracy."

### (a)    Plaintiffs do not allege an act of "racketeering activity."

The federal definition of "racketeering activity" in 18 U.S.C. § 1961(1) contains an exhaustive list of specific statutory provisions and categories of conduct that constitute RICO predicate acts.  Under Georgia RICO, a "racketeering activity" is the commission, attempt, solicitation of another, or coercing of another to commit a "crime which is chargeable by indictment" under one of forty categories of offenses.  O.C.G.A. § 16-14-3(9)(A)(i)-(xl).  "In order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts."  Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 949 (11th Cir. 1997).  In this case, Plaintiffs contend Defendants have engaged in mail and wire fraud and theft by deception but have failed to set forth facts to support each statutory element of these predicate acts.  (Compl. ¶¶ 12, 98, 104, 114, 118.)

"Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme."  Am. Dental Ass'n, 605 F.3d at 1290 (quoting Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991)).  A "scheme to

defraud" involves proof of "a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009). Pleading a RICO violation predicated on mail or wire fraud therefore requires alleging deceptive conduct. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1065 (11th Cir. 2007) (affirming dismissal of RICO claims based on mail fraud where plaintiff did not allege affirmative misrepresentations in mailings).

With respect to the claimed predicate act of theft by deception (actionable only under Georgia, not federal, RICO), O.C.G.A. § 16-8-3 prohibits a person from obtaining property by any deceitful means or artful practice with the intention of depriving the owner of the property. Scott v. State, 277 Ga. App. 876, 878, 627 S.E.2d 904, 906 (2006). "The gravamen of theft by deception 'lies in obtaining the property of another by intentionally creating a false impression as to an existing fact or past event. Creating a false impression as to a future event[,] . . . by a promise of future payment, is not sufficient.'" Brady v. State, 267 Ga. App. 351, 352, 599 S.E.2d 313, 314 (2004) (alteration in original) (quoting Mathis v. State, 161 Ga. App. 251, 288 S.E.2d 317 (1982)). "The element of a false representation must bear on an existing fact or past event and not future performance." Ellerbee v. State, 256 Ga. App. 848, 853, 569 S.E.2d 902, 906 (2002).

Although Plaintiffs' Complaint sets out examples of e-mail, telephone, and letter communications between Plaintiffs and Defendants, Plaintiffs' Complaint fails to identify which uses of the mail or wires contain materially misleading statements or omissions.  For instance, in Paragraph 97, Plaintiffs identify what they call "Defendants' participation in interstate communications made in furtherance of their enterprise" and discuss nineteen (19) purported communications, mostly e-mails, between certain Defendants and representatives of Plaintiffs.  Plaintiffs, however, disregard that only 11 of these communications are from a Defendant or agent of a Defendant in this case.  Plaintiffs also disregard that none of these communications contains a misrepresentation or omission that is actionable as a matter of law or could possibly form the basis of an alleged "scheme."  Instead, Plaintiffs seek to mischaracterize innocuous communications and color them as false.

Examples of such innocent communications referenced as "interstate communications made in furtherance of [Defendants'] enterprise" include:

(1) an e-mail from Defendant Shaffer in which he informs Applegate that Plaintiff Gate was given copies of the pro-formas (yearly financial projections) for all four plants (Compl. ¶ 97.a., Ex. H);

(2) two e-mails from Defendant Kuehr who forwards a previously-sent e-mail containing a task list for the Madison Project and separately indicates to Applegate that he will "be working on a [similar] communication" for the Lumberton Project that afternoon (Id. at ¶ 97.e. & f., Ex. K);

(3) an e-mail from Defendant Kuehr forwarding to Applegate a previously-sent e-mail to Defendant Shaffer in which Kuehr discusses "[r]e-working the Lumberton economic report" (Id. at ¶ 97.j., Ex. M);

(4) an e-mail in which Defendant Kuehr asks for input from Defendant Shaffer and Chris Colucci (of GRP) on a portion of the EB-5 business plan for the Lumberton Project (Id. at ¶ 97.n., Ex. Q); and

(5) an e-mail from Defendant Kuehr responding to a previous e-mail from Lowell Elliott (of Gate), which attaches the EB-5 Business Plans for the Lumberton and Franklin/Madison Projects as of September 2015 and, presumably, a copy of the Term Sheet, in advance of a meeting.  In response, Kuehr informs Applegate and Elliott that he previously forwarded a "bank book on Lumberton recently prepared [which] should give [them] a good sense of where the Lumberton project stands."  (Id. at ¶ 97.q., Ex. S)

Plaintiffs have not (because they cannot) point to a single actionable misrepresentation or omission in these communications.

Moreover, Plaintiffs grossly mischaracterize many of these communications. For instance, in describing an innocuous email from Defendant Shaffer that reads, in its totality, "Thanks Dennis," Plaintiffs allege "Defendant Shaffer acknowledged the issues raised . . . in the preceding paragraph of this Complaint."  (Id. at ¶ 97.h., Ex. L.)  Similarly, Plaintiffs mischaracterize an email sent by "Defendant Kuehr . . . in which he requested copies of certain agreements regarding the Projects" as "one of many opportunities that Defendants had to see that certain of the facts and information contained in those agreements were not consistent with facts presently known to Defendants."  (Id. at ¶ 97.k.)  In fact, the e-mail from

Defendant Kuehr merely asks another person to forward copies of "fuel supply agreements for both fiber (wood) and chicken litter for Lumberton" as well as "fiber agreements . . . for Franklin / Madison" if they exist.  (Id. at Ex. N.)

In addition, what Plaintiffs characterize as an email sent by "Defendant Kuehr . . . to Nic Applegate and others acting on behalf of Plaintiffs, regarding the scheduling of a telephone conference call with Defendant Shaffer, at which the parties would address continuing, open issues regarding information needed for the EB-5 applications for the Projects" is actually an e-mail from Defendant Kuehr stating that he has "a conflict this morning and will not be available for our 10:00 ET call" and "would be available to any open issues after our call with [Defendant Shaffer] at 4:00 ET this afternoon. Thanks."  (Id. at ¶ 97.l., Ex. O).  And what Plaintiffs characterize as an email sent by "Defendant Kuehr . . . to persons including Nic Applegate and Lowell Elliott, which email forwarded other, recent emails regarding Plaintiffs' [sic] continuing efforts to obtain investment financing for the Projects from another source" is actually Defendant Kuehr requesting "Word versions of the Lumberton and Franklin / Madison EB-5 business plans." (Id. at ¶ 97.o., Ex. R.)  These are just some of the many egregious examples of Plaintiffs' mischaracterization of innocuous emails as alleged fraudulent

representations made by Defendants.  Plaintiffs cannot escape the true nature of the exhibits attached to the Complaint.[11]

Furthermore, several statements, as discussed more fully with respect to Plaintiffs' fraud claims below,[12] are based upon conjecture or predications as to future performance or events.  For example, Plaintiffs allege that:

> In February and March 2016, Mr. Applegate had numerous interstate telephone conversations with Defendant Bean about the Plaintiffs' concerns about the Projects.  Defendant Bean, in calls made to Mr. Applegate, assured Plaintiffs that Defendants would continue working with Plaintiffs on the Projects and that Defendants would cure any problems with information on the applications.

(Compl. ¶ 89.)  Plaintiffs may not justifiably rely upon these alleged statements concerning future projections or events to support a fraud claim.  Allstate Ins. Co. v. Sutton, 290 Ga. App. 154, 161, 658 S.E.2d 909, 916 (2008) ("Some of the alleged misrepresentations were merely promises regarding future action . . . that will not support a claim for fraud.")  Nor can these alleged misrepresentations about future events support a claim for theft by deception under O.C.G.A. § 16-8-3, which pertains only to statements about "an existing fact or past event."  In

---

[11] "Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."  Tucker v. Nat'l Linen Serv. Corp., 200 F.2d 858, 864 (5th Cir. 1953).

[12] As a part of Count I, Plaintiffs refer to the "acts of mail and wire fraud set forth above and throughout this Complaint."  (Compl. ¶ 98.)  Defendants further analyze additional allegations made under their counts for fraud and negligent misrepresentation infra.

short, "Plaintiffs' [C]omplaint provides a list of mailings and wires, without ever identifying any actual fraud [upon which they could have justifiably relied].  If the specific misrepresentations do not exist, it follows that the Complaint has not alleged a right to relief that is plausible on its face."  Am. Dental Ass'n, 605 F.3d at 1292.

However, the deficiencies with Plaintiffs' Complaint do not end with Plaintiffs' failure to identify any fraudulent statement or omission.  As addressed above, Plaintiffs also do not allege an injury to money or property within the meaning of the mail or wire fraud statutes.  Plaintiffs' alleged damages are limited to expectancy damages.  Such damages are not appropriate under the mail and wire fraud statute.  See Cleveland v. United States, 531 U.S. 12, 15 (2000) ("[F]or purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim.").  Nor do Plaintiffs' alleged damages constitute "property" that can be obtained by deception within the meaning of O.C.G.A. § 16-8-3.  This inability to assert essential elements for mail and wire fraud, as well as theft by deception, is fatal to Plaintiffs' RICO claims.

**(b)**     **Plaintiffs do not allege a "pattern" of racketeering activity.**

To establish a pattern of racketeering activity, Plaintiffs must not only allege facts sufficient to support each statutory element for at least two predicate acts, 18

- 24 -

U.S.C. § 1961(5), they must also describe the relationship between those acts and allege facts sufficient to show how the commission of those predicate acts is continuous in nature, or in other words, the presence of a threat of such continuing activity.  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1265 (11th Cir. 2004). Under Georgia RICO, a "pattern of racketeering activity" means "at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions" that are interrelated.  O.C.G.A. § 16-14-3(8)(A).

The "continuity" prong of the pattern element requires a civil RICO plaintiff to allege facts showing how the commission of the predicate acts was continuous, either through a closed-set of repeated prior acts committed over a substantial period of time ("closed-ended continuity") or through an open set of predicates covering a shorter period of time but threatening to continue ("open-ended" continuity).  United States v. Browne, 505 F.3d 1229, 1259 (11th Cir. 2007).

Closed-ended continuity can be established by "proving a series of related predicates extending over a substantial period of time."  Jackson, 372 F.3d at 1265 (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242 (1989)).  To qualify as continuous, "closed-ended continuity cannot be met with allegations of schemes lasting less than a year."  Id. at 1266.  Longer periods of time during which illegal conduct purportedly took place still may not support a pattern of racketeering

activity where the RICO allegations concern only a single scheme with a discrete goal and involve a closed group or limited number of victims.  Id. at 1267.

Open-ended continuity can be established by showing the predicates threaten repetition into the future or are otherwise part of the "regular way of doing business."  Id. at 1265.  However, "it is clear that single schemes with a specific objective and a natural ending point can almost never present a threat of continuing racketeering activity."  Ferrell v. Durbin, 311 F. App'x 253, 258 (11th Cir. 2009) (citing Aldridge v. Lily-Tulip, Inc., 953 F.2d 587, 593–94 (11th Cir. 1992)).

Plaintiffs have failed to allege facts to support the requisite closed-ended or open-ended continuity.  The relevant time period, as borne out by the Complaint, is less than two years.  Given the lack of other "victims" of Defendants' alleged "scheme" and the presence of a finite "goal," a less-than-two-year business relationship with two business entities managed by the same individual (Applegate) cannot support a finding of closed-ended continuity, even if all facts in the Complaint are assumed to be true.  Neither can they support a finding of open-ended continuity, because Plaintiffs plead no facts indicating any distinct threat of long-term racketeering activity or from which the Court could construe any ongoing threat of future fraud.  The fact that Defendants secured other investment sources, standing alone, does not revive open-ended continuity because Plaintiffs'

claim Defendants made fraudulent statements and misrepresentations in connection with other entities' investing or seeking investment in the Projects lacks factual support. Ferrell, 311 F. App'x at 258 (finding no open-ended continuity even where plaintiffs accused some defendants of "still acquiring ownership interests in the enterprise from non-party investors via fraudulent use of the wires and mails and through money laundering activities" because this allegation lacked any factual support).

In a desperate effort to manufacture a "pattern" of racketeering activity, Plaintiffs appear to rely on other lawsuits involving GreenFuels or GRP. (Compl. ¶ 32 n.2.) Plaintiffs' identification of these other lawsuits is of no consequence to this analysis. Plaintiffs make no attempt to relate the allegations of those lawsuits to those in the Complaint, and Plaintiffs may not avail themselves of those allegations or treat them as true for purposes of this motion. The limited facts supporting Plaintiffs' allegations reveal the absence of any "pattern" of racketeering activity as required by federal and Georgia RICO. For this reason alone, Counts I, II, IV and V should be dismissed.

### (c)     Plaintiffs do not allege an "enterprise."

As "a central element of a RICO claim," the existence of an enterprise must also "be pled with specificity" under Rule 9(b). Functional Prods. Trading, S.A. v.

JITC, LLC, No. 1:12-CV-0355-WSD, 2014 WL 3749213, at *3 n.8 (N.D. Ga. July 29, 2014) (Judge Duffey).   The plaintiff "must allege an enterprise that had a structure and goals separate from the predicate acts alleged."   Ageloff v. Kiley, 318 F. Supp. 2d 1157, 1159 (S.D. Fla. 2004) (finding enterprise allegations insufficient where the plaintiff "fail[ed] to allege that Defendants' enterprise existed for any purpose other than to defraud Plaintiff").   At the very least, a plaintiff is required to identify the purpose of the enterprise, describe the relationships among its members, and explain how the enterprise has the longevity sufficient to permit its members to pursue that purpose.   Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1352 (11th Cir. 2016) (citing Boyle v. United States, 556 U.S. 938, 946 (2009)).

Moreover, because 18 U.S.C. § 1962(c) limits RICO liability to "person[s] employed by or associated with any enterprise," "[t]he 'person' subject to liability must be distinct from the 'enterprise' whose affairs are conducted through a pattern of racketeering activity."   Burchett v. Lagi, No. 1:11-CV-2379-TWT, 2012 WL 3042984, at *2 (N.D. Ga. July 25, 2012) (Judge Thrash); see also Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 162 (2001) (holding a RICO plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name").   RICO "liability depends on showing that the defendants conducted or

participated in the conduct of the 'enterprise's affairs,' not just their own affairs."

<u>Reves v. Ernst & Young</u>, 507 U.S. 170, 185 (1993).  "Failing to plead that RICO defendants are distinct from the alleged enterprise is cause for dismissal." <u>Burchett</u>, 2012 WL 3042984, at *2.  Such is the case here.

> In an attempt to establish an enterprise, Plaintiffs allege generally that
>
> Defendants' [sic] participated in an enterprise that involved making fraudulent statements and other misrepresentations that were intended to induce other persons and entities, including Plaintiffs, into investing in and/or seeking investment in the Projects, through EB-5 financing and other means of financing. This enterprise included, but was not limited to, using the following entities to attract investment in the Projects: GRP Franklin, LLC; GRP Madison, LLC; GRP North Carolina, LLC; North Carolina Renewable Power-Lumberton, LLC; and North Carolina Renewable Power-Elizabethtown, LLC.

(Compl. ¶ 102.)  Such general allegations do not establish an enterprise.  Plaintiffs' only other substantive mention of the North Carolina Defendants, GRP Franklin, LLC, and GRP Madison, LLC is in Paragraph 57 of the Complaint, where Plaintiffs allege that these parties are "identified as the 'Lender'" on "the first page of the Term Sheet."  (<u>Id.</u> at ¶ 57.)  The first page of the Term Sheet makes no mention of these entities.  Rather, the first page of the Term Sheet identifies "GRP Lumberton **Fund**, LLC; GRP Elizabethtown **Fund**, LLC; GRP Madison **Fund**, LLC; and GRP Franklin **Fund**, LLC" (collectively, Funds) as the "Lender."  (<u>Id.</u> at Ex. F, p. 1.)  As Plaintiffs' counsel acknowledges in his April 15, 2016 letter to

Bean, the Funds are "Gate's affiliates" and have no relation to any Defendant.  (Id. at Ex. T, p. 1 n.1.)  In short, the Complaint contains no allegation as to how the North Carolina Defendants, GRP Franklin, LLC, and GRP Madison, LLC were used to attract investment in the Projects aside from a paragraph incorrectly stating that these entities were identified as the "Lender" on the Term Sheet.

Further, Plaintiffs' RICO claims should be dismissed because they are brought against parties who are both RICO defendants and the alleged RICO enterprise, in violation of RICO's "non-identity rule."  Indeed, nowhere in the Complaint do Plaintiffs allege Defendants associated with any third parties to form an enterprise sufficiently distinct from themselves.

### (d)    Plaintiffs do not allege a "conspiracy."

"A civil RICO conspiracy claim requires a showing of the existence of a conspiracy, and the commission of an overt act in furtherance of the conspiracy that causes injury to the plaintiff."  Beck v. Prupis, 162 F.3d 1090, 1098 (11th Cir. 1998), aff'd, 529 U.S. 494 (2000).  "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts."  Republic of Panama, 119 F.3d at 950.  Further, "[t]o be guilty of conspiracy, . . . parties must have agreed to commit an act that is itself illegal—

parties cannot be found guilty of conspiring to commit an act that is not itself against the law." Jackson, 372 F.3d at 1269 (quotation omitted).

To sufficiently plead the existence of a RICO conspiracy, a plaintiff must allege the specifics of how those involved agreed among themselves to engage in the activity that violates RICO's other substantive provisions—18 U.S.C. § 1962(a), (b), or (c). This includes when and where such an agreement occurred as well as its terms. Almanza v. United Airlines, Inc., 162 F. Supp. 3d 1341, 1353–54 (S.D. Ga. 2016). Mere allegations of a defendant's knowledge of the alleged predicate activity is insufficient to survive dismissal. O'Malley v. O'Neill, 887 F.2d 1557, 1560 (11th Cir. 1989) (dismissal proper where plaintiff alleged some defendants knew about activities of mail fraud but failed to allege facts to indicate defendants were willing participants in a conspiracy); Am. Dental Ass'n, 605 F.3d at 1294 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007))). Yet that is exactly what Plaintiffs do here.

Plaintiffs allege, in conclusory fashion, that Defendants "agreed and conspired to violate 18 U.S.C. § 1962(c)"; "intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity"; and "knew that their predicate acts were part of a

pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above." (Compl. ¶¶ 110-111.) However, Plaintiffs plead no facts regarding when any agreement was entered, by whom, the agreed-upon duration of the conspiracy, the scope of the agreement, what predicate acts Defendants agreed to commit, or how each participant in the alleged conspiracy had knowledge that acts being committed were part of pattern of racketeering activity. This failure to plausibly allege the existence of a RICO conspiracy subjects Count III to dismissal.

### 3. Plaintiffs fail to allege proximate cause.

In addition to failing to allege a cognizable injury or a substantive RICO violation, Plaintiffs also fail to allege that Defendants' alleged RICO conduct proximately caused their purported injuries. It is well settled that "courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations." Williams, 465 F.3d at 1287 (citing Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006)). "For federal RICO purposes, courts evaluate proximate cause 'in light of its common-law foundations.'" Corcel Corp. v. Ferguson Enters., Inc., 551 F. App'x 571, 575–76 (11th Cir. 2014) (quoting Hemi Grp., LLC v. City of New York, N.Y., 559 U.S. 1, 9 (2010)). The causal connection "between the

racketeering activity and the injury can be neither remote, purely contingent, nor indirect." Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1349 (11th Cir. 2016). Yet that is exactly the case here.

As addressed above, Plaintiffs' injuries are contingent upon several factors, including: whether loans were forthcoming; the amount of the loans; and proof that they would have secured other alleged business opportunities. The pure speculation required to arrive at such damages demands a finding they are so remote so as to render proximate cause completely lacking. See Ray, 836 F.3d at 1349 (noting even "the fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause in a RICO action—the injury must be direct").

### B. Plaintiffs Fail to State a Claim for Fraud and Negligent Misrepresentation.

In Count VI of the Complaint, Plaintiffs attempt to assert a claim for fraud against "Defendants" based on alleged

> misrepresentations about specific aspects of the complex power plants that were part of the Projects, such as the type of equipment to be used at the power plants, the amount of electrical power and profits that each of the Projects would produce, and the status of key personnel who were working (or continuing to work) on the Projects-including material omissions about the fact that certain key personnel had quit working for Defendants and thus on the Projects.

(Compl. ¶ 122.) Plaintiffs rely on these same alleged misrepresentations to support their claim for negligent misrepresentation in Count VII. (Compl. ¶ 127.)

However, Plaintiffs fail to allege who made these statements, when these statements were made, to whom they were made, or how they were made (i.e., oral or written).  Moreover, none of these alleged misrepresentations can support a fraud or negligent misrepresentation claim.

To state a claim for fraud under Georgia law, a plaintiff must adequately allege facts to establish: (1) false representations; (2) made with knowledge of the falsity of the representation; (3) made with the intent to induce the plaintiff to act or to refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages proximately caused by such reliance in the representation.  Bowen & Bowen Constr. Co. v. Fowler, 265 Ga. App. 274, 276, 593 S.E.2d 668, 671 (2004).[13] These same elements apply to a claim for negligent misrepresentation, "the only difference being whether the defendant knowingly or negligently made the misrepresentations."  Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C., 426 F. Supp. 2d 1356, 1366 (N.D. Ga. 2006) (Judge Thrash).

---

[13] This Court applies Georgia choice of law principles to determine what law governs Plaintiffs' fraud and negligent misrepresentation claims.  See Gilbert v. Monaco Coach Corp., 352 F. Supp. 2d 1323, 1329 (N.D. Ga. 2004).   Under Georgia choice of law principles, "[w]hen no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." Frank Briscoe Co. v. Georgia Sprinkler Co., 713 F.2d 1500, 1503 (11th Cir. 1983). This choice of law limitation applies to tort and contract claims.   In re Tri-State Crematory Litig., 215 F.R.D. 660, 679 (N.D. Ga. 2003).

In determining whether a plaintiff has sufficiently alleged facts to establish a claim for fraud or negligent misrepresentation, Georgia courts have consistently found that a misrepresentation is not actionable if it is based upon a broken promise, an unfulfilled prediction, or an erroneous conjecture as to future events. Allstate Ins. Co. v. Sutton, 290 Ga. App. 154, 161, 658 S.E.2d 909, 916 (2008) ("Some of the alleged misrepresentations were merely promises regarding future action or representations regarding matters of law that will not support a claim for fraud."). Courts have also found claims for fraud and negligent misrepresentation fail as a matter of law where a party relies on alleged misrepresentations without performing its own due diligence to investigate the truth of the alleged representations. Tri-State Consumer Ins. Co., Inc. v. LexisNexis Risk Solutions Inc., 823 F. Supp. 2d 1306, 1320 (N.D. Ga. 2011) (Judge Batten) ("Tri-State could have easily discovered for itself whether Lexis had successfully integrated and implemented its software for Merastar by contacting Merastar itself."). Applying these principles, none of the alleged misrepresentations are actionable under Georgia law.

As to the alleged misrepresentation about "the type of equipment to be used at the power plants," Plaintiffs fail to identify anywhere in the Complaint how any statement regarding the type of equipment to be used was false at the time the

statement was made.  In other words, they do not allege any facts to support their contention that any statement related to equipment was a "misrepresentation about . . . the type of equipment to be used at the power plants."  (Id. at ¶ 122.) Moreover, any statement about the type of equipment to be used at the power plants amounts to a conjecture of a future event such that Plaintiffs could not justifiably rely upon it.

Similarly, Plaintiffs could not justifiably rely on any alleged misrepresentation about the "amount of electrical power and profits that each of the Projects would produce" because such a statement relates to future events and amounts to mere prospect, expectation, or erroneous conjecture.  (Id.)

Nor can Plaintiffs justifiably rely on Defendants alleged failure to inform Plaintiffs about "key personnel" no longer working on the projects.  Plaintiffs could have easily discovered for themselves whether the two alleged "key personnel had quit" by contacting those individuals directly.  (Id.)  This failure of Plaintiffs to conduct any due diligence is fatal to their claim.  Charter Med. Mgmt. Co. v. Ware Manor, Inc., 159 Ga. App. 378, 380, 283 S.E.2d 330, 333 (1981) ("'Misrepresentations are not actionable unless the hearer was justified in relying on them in the exercise of common prudence and diligence.'").

Furthermore, any alleged omission regarding "personnel" is not a material fact upon which a claim for fraud can be based.  The Engagement Agreements do not even reference the "key personnel," and the presence of a merger clause in the Engagement Agreements precludes Plaintiffs' from claiming that they relied upon any alleged representation about "key personnel" when executing the Engagement Agreements.  Liberty v. Storage Trust Props., L.P., 267 Ga. App. 905, 910, 600 S.E.2d 841, 846 (2004) ("As a result, where a contract contains a merger clause, a party cannot assert 'they relied upon representations other than those contained in the contract.'").   Thus, any alleged omission about "key personnel" cannot "amount to actionable fraud."  First Data POS, Inc. v. Willis, 273 Ga. 792, 795, 546 S.E.2d 781, 784 (2001) (internal quotations omitted).

### C.    Plaintiffs Fail to State a Claim for Breach of Contract.

In Count VIII, Plaintiffs allege Defendants breached the Engagement Agreements and the Term Sheet by "failing to provide timely and accurate information needed for Plaintiffs to proceed with EB-5 applications for them and to seek funding for them."  (Compl. ¶ 138.)  These claims fail as a matter of law for several reasons.[14]

---

[14] As a preliminary matter, Plaintiffs claim that "Defendants" breached the Engagement Agreements fails from the outset with regard to all Defendants except Greenfuels since none of the other Defendants are a party to the Engagement

The essential elements of a claim for breach of contract are (1) the breach and (2) resulting damages (3) to the party having the right to complain about the breach.  TechBios, Inc. v. Champagne, 301 Ga. App. 592, 595, 688 S.E.2d 378, 381 (2009).  To properly plead a cause of action for breach of contract, the plaintiff must point to the specific contractual provision the defendant allegedly breached by acting, or failing to act, in a certain manner.  Failure to point to a particular contract provision is fatal to breach of contract claim.  See Adkins v. Cagle Foods JV, LLC, 411 F.3d 1320, 1327 (11th Cir. 2005) (affirming dismissal of breach of contract claim because plaintiffs could not identify any contractual provision breached by defendant); Barnes v. Burger King Corp., 932 F. Supp. 1420, 1435 (S.D. Fla. 1996) (finding breach of contract claim failed as a matter of law where plaintiff could not cite to an express contractual provision breach and could not sustain claim based on introductory paragraph in which plaintiff stated that he "recognized the benefits to be derived from being identified with" franchisor because it did not set forth any obligations).

---

Agreements.  See O'Connell v. Cora Bett Thomas Realty, Inc., 254 Ga. App. 311, 563 S.E.2d 167, 170 (2002) (finding an entity not a party to a contract could not be liable for its breach); Martin v. Pierce, 140 Ga. App. 897, 899, 32 S.E.2d 170, 172 (1977) (noting a "person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms").

Although Plaintiffs allege Defendants breached the Engagement Agreements, the only substantive provision referenced in the Complaint reads:

> REPRESENTATIONS BY THE CLIENT. The acts, statements and representations made by or on behalf of the Client to prospective foreign investors or other transaction counterparties about the Client or the Project, including but not limited to representations in the Business Plan, Private Placement Memorandum or other offering documents, ***are the sole responsibility of the Client and the Client agrees to indemnify the Regional Center*** and its officers, directors, members, managers, employees, attorney, and agents ***for any liability, claims, losses and expensed, including legal expenses, incurred by the Regional Center that result from any of the Client's acts, statements and representations about the Client or the Project.***

(Compl. ¶ 54 (emphasis in original).)  This provision is an indemnification clause under which the Client (GreenFuels) would be solely responsible for representations it made to the Regional Center (Plaintiffs Southern Film and Gate) in connection with any submission of information by Southern Film and Gate to the USCIS.  Plaintiffs do not allege they incurred any such loss or liability in connection with submitting information to the USCIS in connection with the Projects.  Thus, they fail to identify any provision of the Engagement Agreements that any Defendant breached or under which any Defendant would be liable.

Plaintiffs also repeatedly claim Defendants (and, in particular, Defendant Shaffer) orally asked Plaintiffs to work exclusively on Defendants' Projects for a period of an entire year.  Yet Paragraph 12 the Engagement Agreements

specifically provides that "[Greenfuels] acknowledges that [Southern Film and Gate are] in the business of providing structured financing to others. Nothing contained in this Agreement is to be construed to limit or restrict the Regional Center in the conduct of its business with respect to others, or in rendering such advice to others." (Compl. Exs. A-D, p. 3.)

Further, each Engagement Agreement contains the following merger provision:

> 17.    ENTIRE AGREEMENT.  This agreement constitutes the entire Agreement of, and supersedes any prior agreements or understanding between the parties.  No amendment, alteration, or withdrawal of the Agreement will be valid or binding unless made in writing and signed by the parties.  Any purported amendment, modification, or withdrawal that is oral will be void and of no effect whatsoever.

(Id. at Ex. A-D, p. 4.)  This merger clause is significant for three reasons.  First, it precludes Plaintiffs from justifiably relying on any alleged representations concerning exclusivity made prior to or contemporaneous with the Engagement Agreements.  Liberty v. Storage Trust Props., L.P., 267 Ga. App. 905, 910, 600 S.E.2d 841, 846 (2004).  Second, it renders any alleged oral amendment, modification, or alteration of the Engagement Agreements "void."  Third, any modification of the terms of the Engagement Agreements would require that the

"subsequent agreement [be] founded on sufficient consideration."  Thompson v. Enter. Leasing Co. of Ga., 240 Ga. App. 222, 223–24, 522 S.E.2d 670, 672 (1999).

Regarding this third point, Plaintiffs fail to allege any facts as to the exchange of new and adequate consideration that would support this new alleged agreement upon which Plaintiffs rely heavily throughout their Complaint.  Rather, Plaintiffs merely allege that "[d]ue to the great size and complexity of each of the Projects, . . . Plaintiffs explained to Defendants the substantial amount of time, effort, and expense that would be involved in preparing the EB-5 applications and, thereafter, seeking funding of the Projects" and "[i]n response, Defendant Shaffer repeatedly asked Plaintiffs (in the presence of others) to work exclusively and only on Defendants' applications for the four power plant Projects for one year. Plaintiffs agreed and honored that request by working exclusively on the Projects for a year, foregoing other business opportunities as a result."  (Compl. ¶¶ 48-49.) Putting aside Plaintiffs' failure to identify the "others" in whose presence Defendant Shaffer purportedly made this request, the failure to allege facts to support the existence of new and adequate consideration for this alleged subsequent agreement prevents Plaintiffs from availing themselves of it. Accordingly, Plaintiffs' claim for breach of the Engagement Agreements fails as a matter of law.

Nor can Plaintiffs show Defendants breached the Term Sheet, let alone that Term Sheet constitutes a binding agreement.  In fact, the Term Sheet contains multiple provisions that expressly indicate it (1) is limited to terms under which loans would be made and (2) is non-binding:

- "This is not a binding commitment or agreement to lend money."
- "Any advance under the Loan is subject to the terms set forth below . . . ."
- "The terms and conditions outlined herein are outlined for discussion purposes only and are subject to approval of both parties."

(Compl. Ex. F. pp. 1, 4.)  Accordingly, by its terms, the Term Sheet cannot support a claim for breach of contract because it does not constitute a binding agreement. Harmon v. Innomed Techs., Inc., 309 Ga. App. 265, 266, 709 S.E.2d 888, 890 (2011).  And even if the Term Sheet were an enforceable contract (which it is not), Plaintiffs must point to an express provision that Defendants allegedly breached to state a claim for breach of contract.   Adkins, 411 F.3d at 1327; Barnes, 932 F. Supp. at 1435.  They have not done so.

### D.   Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

The implied covenant of good faith and fair dealing refers to a "duty to diligently and in good faith seek to comply with all portions of the terms of a contract."  Stuart Enters. Int'l, Inc. v. Peykan, Inc., 252 Ga. App. 231, 233, 555 S.E.2d 881, 884 (2001).  It does not impose "an undertaking that can be breached

- 42 -

apart from" the explicit terms of a contract.   Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990).  Rather, it is a "doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when performance is maintained *de jure*."  Stuart, 252 Ga. App. at 234, 555 S.E.2d at 884.  Therefore, "general allegations concerning the breach of an implied duty of good faith and fair dealing not tied to a specific contract provision are not actionable."  Tart v. IMV Energy Sys. of Am., Inc., 374 F. Supp. 2d 1172, 1181 (N.D. Ga. 2005) (Judge Duffey).  Accordingly, Plaintiffs' claim fails as a matter of law because Plaintiffs have not alleged facts establishing a breach of any provision of a binding contract between one or more Plaintiffs and one or more Defendants.

**E.   Plaintiffs Fail to State a Claim for *Quantum Meruit* or Unjust Enrichment.**

To recover under *quantum meruit*, Plaintiffs must show (1) performance of services valuable to Defendants, (2) either at the request of Defendants or knowingly accepted by Defendants, (3) Defendants' receipt of which without compensating Plaintiffs would be unjust, and (4) Plaintiffs' expectation of compensation at the time of the rendition of the services.  Perry Golf Course Dev., LLC v. Hous. Auth. of City of Atlanta, 294 Ga. App. 387, 394, 670 S.E.2d 171, 178 (2008).  The theory of unjust enrichment likewise applies "when there is no

legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." Smith Serv. Oil Co. v. Parker, 250 Ga. App. 270, 271, 549 S.E.2d 485, 487 (2001).  Unjust enrichment is available only when there is no legal contract.  Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., 139 F.3d 1396, 1413 (11th Cir. 1998) (citing Reg'l Pacesetters, Inc. v. Halpern Enters. Inc., 165 Ga. App. 777, 782, 300 S.E.2d 180 (1983)).

In their Complaint, Plaintiffs allege, again in conclusory fashion, that they "provided services to and for Defendants that were valuable and that were valuable to Defendants, including but not limited to assistance with EB-5 and other financing for the Projects," that "Defendants requested that Plaintiffs provide these valuable services," that "Defendants knowingly accepted these valuable services from Plaintiffs and knowingly allowed Plaintiffs to perform these valuable services for and on behalf of Defendants," and that "Defendants' receipt of these valuable services from Plaintiffs, without compensating Plaintiffs for such services, would be, and is, unjust." (Compl. ¶¶ 148-151.)  However, lost in any discussion of the services Plaintiffs allege to have performed for Defendants is any allegation that they were conferred upon Defendants without payment.

Moreover, to the extent Plaintiffs conferred any benefit on Defendants by performing their duties under the Engagement Agreements, a separate claim for

- 44 -

unjust enrichment is improper and does not lie.  <u>Tidikis v. Network for Med.</u>
<u>Commc'ns & Research LLC</u>, 274 Ga. App. 807, 811, 619 S.E.2d 481, 485 (2005)
(unjust enrichment claim failed as a matter of law and was properly dismissed
when benefits were conferred in accordance with unchallenged contract).

<u>**CONCLUSION**</u>

This is not a legitimate RICO case.  Plaintiffs fail in their attempt to plead
around the unavoidable fact they are not entitled to any relief from Defendants.
For the above and foregoing reasons, Defendants respectfully request that the
Court grant their Motion and dismiss Plaintiffs' Complaint in its entirety with
prejudice.

This 5th of December, 2016.

Respectfully submitted,

GREENBERG TRAURIG

<u>*/s/ Janna Nugent*</u>
Ernest L. Greer
Georgia Bar No. 309180
Mark G. Trigg
Georgia Bar No. 716295
triggm@gtlaw.com
Janna Nugent
Georgia Bar No. 940465
nugentj@gtlaw.com
Counsel for Defendants

Terminus 200
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia  30305
Telephone:  (678) 553-2100
Facsimile:  (678) 553-2212

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1</u>

I hereby certify that the within and foregoing document was prepared in Times New Roman, 14-point font in accordance with L.R. 5.1C.

This 5th day of December, 2016.

*s/ Janna S. Nugent*
Janna S. Nugent
Georgia Bar No. 940465
Counsel for Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| FIVE ON FIFTY, LLC; GATE INDUSTRIES, LLC  and SOUTHERN FILM REGIONAL CENTER-ATLANTA, LLC<br><br>           Plaintiff,<br><br> -vs.-<br><br>F. RAYMON BEAN; DAVID SHAFFER; JEFFREY KUEHR; GREENFUELS ENERGY, LLC; GEORGIA RENEWABLE POWER, LLC; GRP FRANKLIN, LLC; GRP MADISON, LLC; GRP NORTH CAROLINA, LLC; NORTH CAROLINA RENEWABLE POWER-LUMBERTON, LLC; and NORTH CAROLINA RENEWABLE POWER-ELIZABETHTOWN, LLC<br><br>           Defendants. | Civil Action No.<br>1:16-cv-3690 - TCB |

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2016 the foregoing document titled

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**

**TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE**

**STATEMENT** was filed with the Court through its CM/ECF service which shall

send electronic notice of said filing to the following attorneys of record:

Thomas C. Grant, Esq.
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
1180 Peachtree Street, N.E.
Suite 2900
Atlanta, Georgia 30309


*/s/ Janna Nugent*
Janna Nugent
Georgia Bar No. 940465
Counsel for Defendants


*ATL 21660944v15*

- 49 -