# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Five on Fifty, LLC, et al.,

                  Plaintiffs,      Case No. 1:16-cv-03690

v.                             Michael L. Brown
                             United States District Judge

F. Raymon Bean, et al.,

                  Defendants.

_____/

## **ORDER**

Plaintiffs Five on Fifty, LLC; Gate Industries, LLC; and Southern Film Regional Center–Atlanta, LLC, sue ten defendants — three individuals and seven entities — for claims arising from allegedly fraudulent misrepresentations related to the application and financing of four electrical power plants. Defendants move to dismiss Plaintiffs' amended complaint. (Dkt. 36.) The Court grants Defendants' motion.

## I.     Factual Background[1]

Plaintiffs Five on Fifty, LLC, Gate Industries, LLC, and Southern Film Regional Center–Atlanta, LLC, sue ten defendants:  three individuals and seven limited liability companies.  Having once grouped all Defendants together, Plaintiffs now break them up into two sets:  the "Entity Defendants" and the "Individual Defendants."   The Entity Defendants consist of GreenFuels Energy, LLC; Georgia Renewable Power, LLC; GRP Franklin, LLC; GRP Madison, LLC; GRP North Carolina, LLC; North Carolina Renewable Power–Lumberton, LLC; and North Carolina Renewable Power–Elizabethtown, LLC.  The Individual Defendants are F. Raymon Bean, David Shaffer, and Jeffrey Keuhr.  (Dkt. 33 at 2 n.1.)

This dispute arises from the termination of a soured business relationship concerning the construction of four electrical powerplants — two in North Georgia and two in North Carolina — using funding for EB-5 Projects.  EB-5 Projects are part of a foreign investment program that

---

[1] In its order on Defendants' first motion to dismiss, the Court detailed the facts of this case.  (Dkt. 30 at 2–9.)  The Court incorporates by reference that discussion, summarizes the facts here, and highlights any material differences arising from Plaintiffs' amended complaint.

involves a complex and expensive application process, in which an applicant must show to the federal government that the business venture will create a specified number of jobs to attract foreign investment. (Dkt. 33 ¶ 2.) The Entity Defendants retained Plaintiffs to apply for and fund an EB-5 project for each of the four power plants.

The Entity Defendants communicated the detailed assumptions about each of the projects through key documents known as "pro forma" — a detailed group of spreadsheets that the Entity Defendants periodically prepared and communicated to Plaintiffs through emails. In the pro formas, the Entity Defendants made detailed representations to Plaintiffs and to the professionals working on the projects about the projected performance, equipment, cost, and profit of each plant and project. (*Id.* ¶ 67.)

Based entirely on information provided and confirmed by Defendants, the numbers and other representations in the EB-5 application for the Lumberton plant assumed and represented that the plant would generate an output of 40mw (which turned out to be nearly double the amount of actual output). (*Id.* ¶ 69.) Essentially, the power plants did not and have not performed consistent with the parties' hopes

3

or expectations — and Plaintiffs allege that Defendants knew this and intentionally "kept [Plaintiffs] in the dark." (Dkt. 33 ¶ 79.)

After inconsistencies and irregularities in the information provided in pro formas and other communications suggested that the Lumberton power plant would not generate the output, profit, and job creation represented in the original plan, Plaintiffs requested that Defendants revise the reports. (*Id.* ¶ 71.) Defendants refused. (*Id.*) Plaintiffs also newly allege problems with the permitting process, alleging that "the Entity Defendants were aware of these permitting problems" before submitting the application but did not inform Plaintiffs until later. (*Id.* ¶ 77.)

In March 2016, Defendant Schaffer terminated the relationship, informing Plaintiffs in a letter that Defendant GreenFuels Energy had entered into an exclusive arrangement with a different strategic partner. (*Id.* ¶ 91.) Plaintiffs then sued Defendants alleging claims of violations under state and federal Racketeer Influence and Corrupt Organizations ("RICO") laws, fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust

enrichment, and claims for attorneys' fees and punitive damages. (Dkt. 1.)

Defendants moved to dismiss or, in the alternative, for a more definite statement. (Dkt. 17.) The Court granted Defendants' motion but allowed Plaintiffs a chance to correct their pleading deficiencies. (Dkt. 30.) Plaintiffs filed an amended complaint, and Defendants have again moved to dismiss. (Dkts. 33; 36.)

## II.   Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Detailed factual allegations are not required, but a pleading must offer more than "labels

and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555.

When a plaintiff alleges a cause of action based in fraud, however, Federal Rule of Civil Procedure 9(b) must be satisfied on top of the more relaxed standard of Rule 8.  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although parties may allege generally "conditions of a person's mind," such as malice, intent, and knowledge.  FED. R. CIV. P. 9(b).

"The particularity requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior."  *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (per curiam) (internal quotation marks omitted); *see also Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985) (recognizing that Rule 9(b) serves to "eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed").  "[T]he failure to satisfy Rule 9(b) is a ground for dismissal of a complaint."  *Corsello v. Lincase, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam).

## III.   Discussion

### A.     Personal Jurisdiction Issues

The general rule is that "courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935, 940 (11th Cir. 1997).  This is because "[a] defendant . . . not subject to the jurisdiction of the court cannot be bound by its rulings."  *Id.*  Although the Court has considered the entirety of Defendants' motion and the opposing briefs, the Court addresses the personal jurisdiction issue first. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) (noting that a "court should decide a 12(b)(2) motion before a 12(b)(6) motion because 'a court without [12(b)(2)] jurisdiction lacks power to dismiss a complaint for failure to state a claim' ") (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)).

### 1.     Defendants' Motion to Dismiss the North Carolina Defendants for Lack of Personal Jurisdiction

Before a federal court may exercise personal jurisdiction over a nonresident defendant, it must determine that it has jurisdiction under (1) either the long-arm statute of the state in which it sits or a federal statute and (2) the due process clause of the United States Constitution.

*See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). "Only if both prongs of the analysis are satisfied may a federal court exercise personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal*, 593 F.3d at 1257 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). When analyzing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court must "first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process." *Republic of Panama*, 119 F.3d at 942.

Defendants argue that the Court lacks personal jurisdiction over the three North Carolina Defendants — that is, GRP North Carolina, LLC; North Carolina Renewable Power–Lumberton, LLC; and North

Carolina Renewable Power–Elizabethtown, LLC.   (Dkt. 36-1 at 14.)
Plaintiffs counter that the North Carolina Defendants are subject to this
Court's jurisdiction, because of "many, specific allegations of the North
Carolina Defendants' connections with the forum."  (Dkt. 39 at 7.)  The
Court agrees it has personal jurisdiction over the North Carolina
Defendants, but on different grounds.

Under the standard jurisdictional analysis, the amended complaint
still fails to allege sufficient facts to support the exercise of jurisdiction
over these out-of-state Defendants. *See Taylor v. Appleton*, 30 F.3d 1365,
1367 (11th Cir. 1994) (holding that a plaintiff must "affirmatively allege
facts demonstrating the existence of jurisdiction" over each nonresident
defendant).   As its jurisdictional evidence, Plaintiffs assert that,
"[a]lthough the two North Carolina power plants are not located in
Georgia, the North Carolina entities associated with those projects had
representatives (including the Individual Defendants) who frequently
communicated and met with professionals in Atlanta."  (Dkt. 33 ¶ 20.)

As Defendants rightly argue, however, just because a meeting takes
place in Georgia does not mean the participants purposefully availed
themselves of the privileges of doing business in Georgia so as to confer

personal jurisdiction automatically over them under the Georgia long-arm statute. *See Stephens v. Coleman*, 712 F. Supp. 1571, 1576–77 (N.D. Ga. 1989) (concluding vague allegation that defendant came to Atlanta to meet with plaintiff was insufficient "to support a reasonable inference that [defendant] could be subjected to the jurisdiction of this court"). Despite their efforts to beef up the jurisdictional allegations in their amended complaint, Plaintiffs have still failed to allege sufficient facts to support the exercise of personal jurisdiction over the North Carolina Defendants — under the typical personal jurisdiction analysis.

The Court, however, finds that it may still exercise personal jurisdiction over all ten Defendants, including the North Carolina Defendants, because of RICO's nationwide service-of-process provision and the Eleventh Circuit's interpretation of it. *See* 18 U.S.C. § 1965(d) ("All other process is any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.").

The Eleventh Circuit has held that RICO authorizes nationwide service of process, permitting a court to exercise personal jurisdiction over any RICO defendant properly served, as long as the exercise of that

jurisdiction satisfies due process.  *Republic of Panama*, 119 F.3d at 940–48.  Plaintiffs may invoke nationwide service of process if their "asserted federal claim is not wholly immaterial or insubstantial."  *Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014) (internal quotation marks omitted).  "[U]nder RICO and other statutes with nationwide service-of-process provisions, a court 'should dismiss for lack of jurisdiction only if the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as not to involve a federal controversy.' "  *Id.* (citing *Republic of Panama*, 119 F.3d at 941–42).  Said differently, "whether a basis exists for exercising personal jurisdiction under RICO depends on whether [Plaintiffs have] stated a 'colorable' RICO claim."  *Id.*  The Court concludes that they have.

The federal civil RICO provision "permits any person injured in his business or property by reason of a violation of RICO's criminal provisions to recover treble damages and attorney's fees."  *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 751 (11th Cir. 2000); *see* 18 U.S.C. § 1964(c).  To establish a RICO violation then, a plaintiff must show four elements:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity." *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994); *see* 18 U.S.C. § 1962.

Although the Court ultimately finds Plaintiffs' RICO claims subject to dismissal for lack of pleading particularity, the Court finds them not "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as not to involve a federal controversy." *Courboin*, 596 F. App'x at 732; *see Republic of Panama*, 119 F.3d at 941 (noting the distinction "between a 'colorable federal claim' and a 'federal claim upon which relief can be granted' "). The Court thus finds that it has personal jurisdiction over each of the North Carolina Defendants. *Kammona v. Onteco Corp.*, 587 F. App'x 575, 579–80 (11th Cir. 2014) ("[N]ationwide service-of-process provision[s] grant[ ] district courts nationwide personal jurisdiction over any defendant that has minimum contacts with the United States.").

This is because (1) Plaintiffs have a right to take advantage of RICO's nationwide service-of-process provision and (2) each of these Defendants has sufficient "aggregate contacts with the nation as a whole," as required under the RICO-Fifth Amendment jurisdictional inquiry. *See Republic of Panama*, 119 F.3d at 946–47 (finding exercise of

jurisdiction over nonresident defendants proper in case with colorable RICO claim); *NCI Grp., Inc. v. Cannon Servs., Inc.*, No. 1:09-CV-0441-BBM, 2009 WL 2411145, at \*5 (N.D. Ga. Aug. 4, 2009) (statutory basis for jurisdiction satisfied when plaintiffs meet statutory requirements of proper service and defendants were corporations with principal place of business in United States or residents of United States).

Although neither party brought up RICO's sweeping jurisdictional net in their arguments about jurisdiction over the North Carolina Defendants, the Court still finds that it may properly exercise personal jurisdiction over all ten Defendants on this basis and denies that portion of Defendants' motion to dismiss. *See Guice v. Postmaster Gen.*, 718 F. App'x 792, 795 (11th Cir. 2017) (finding no error in district court's consideration of "arguments and authorities not raised by either party" because "courts are permitted—indeed, obligated—to conduct their own research on legal issues before [them]"). Having satisfied itself that it may appropriately exercise personal jurisdiction over each of these parties, the Court now addresses the remaining arguments in Defendants' motion to dismiss.

**B.    Defendants' Motion to Dismiss (Dkt. 36)**

**1.    Counts I through VII – Fraud-related Claims**

Plaintiffs assert claims against all Defendants under the RICO statutes, both federal and state, and for fraud and negligent misrepresentation.  (Dkt. 33 ¶¶ 111–153.)  Defendants again move to dismiss these claims for lacking the necessary "particularity" as required by Federal Rule of Civil Procedure 9(b).  (Dkt. 36-1 at 18–28.)  The Court agrees that Plaintiffs have failed to remedy the deficiencies in their original complaint identified by Defendants and the Court.

Because Plaintiffs assert claims based on fraudulent misrepresentations, their substantive allegations must comply not only with the plausibility criteria set out in *Twombly* and *Iqbal* but also with Rule 9(b)'s heightened pleading standard requiring parties to plead with particularity any allegations of fraud.  *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).  Rule 9 thus requires a plaintiff to allege

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they

14

misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*Findwhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).  Despite having been given a chance to amend their complaint, Plaintiffs have not satisfied these pleading requirements.

First, the Court advised Plaintiffs in its prior order about the need to "be more specific about the role that each individual Defendant played in the events giving rise to this suit." (Dkt. 30 at 11.)  Plaintiffs have not done so.  The Court can see that Plaintiffs have now separated Defendants into "Entity Defendants" and "Individual Defendants," slightly more specific than the original complaint which referred only to "Defendants" collectively.  But Plaintiffs did not meaningfully alter many of these allegations, instead merely inserting "the Entity" or "the Individual" before the word "Defendants." (*See, e.g.*, Dkt. 33 ¶¶ 2, 3, 4, 9, 11, 54, 55, 56, 81, 86.)  Despite the separation into two groups, the Court finds that this "lumping of multiple" Defendants continues to be problematic.  *See Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 663 (11th Cir. 2015) (per curiam) ("This court has repeatedly held that lumping multiple defendants together in such generalities is insufficient under Rule 9(b).").

The Court also notes that many of Plaintiffs' allegations continue to level claims of fraud against all ten "Defendants" collectively, despite the Court's prior warning not to do so. (Dkt. 30 at 10–11.) For instance, Plaintiffs allege that "*Defendants* misrepresented the type and size of a boiler . . ." and that "*Defendants* knew and/or should have known (for a considerable amount of time) about the problems [with the plants but] they instead chose to misrepresent information about the plants to Plaintiffs and to hide material facts from the Plaintiffs." (Dkt. 33 ¶¶ 6, 7, 10, 69, 74, 75, 79, 80, 88.) These conclusory allegations are too general, do not correct the deficiencies the Court identified in its prior order, and fail to comply with Rule 9(b)'s particularity requirements. What information was fraudulently misrepresented or omitted? Who made those misrepresentations? And to which of the Plaintiffs were they made? How and when did these misrepresentations take place? Plaintiffs' amended complaint leaves these questions unanswered.

And as Defendants correctly point out, Plaintiffs have in many places also simply removed references to "Defendants" without altering the substance of the allegation or trying to offer any greater clarity or particularity. (*See, e.g.*, *id.* ¶¶ 50, 61, 73, 77, 78, 84.) These minor

deletions or additions are insufficient to satisfy the pleading deficiencies the Court previously identified.  Related to this problem, too, is Plaintiffs' continued references throughout the amended complaint to themselves collectively, about which the Court warned them in its prior order.  (*See* Dkt. 30 at 11 ("Plaintiffs should also take care when repleading to avoid referring to themselves collectively.").)

As another example, Plaintiffs accuse Defendants of fraud over the replacement or upgrade of a boiler at one of the plants.  But as mentioned above, the amended complaint alleges that "*Defendants* misrepresented the type and size of a boiler that was a key part of the Lumberton plant's ability to generate the requisite amount of electrical power."  Plaintiffs also allege that "[a]lthough *Defendants* were aware that the EB-5 application documents for the Lumberton project continued to assume the use of such a new boiler, the *Entity Defendants* ultimately decided (on their own and without promptly informing Plaintiffs) against replacing the boiler, as initially planned.  The *Entity Defendants* made that decision well before September 2015 but chose not to notify Plaintiffs until well into 2016."  (Dkt. 33 ¶ 70.)  These allegations continue improperly to refer to groups of Defendants collectively, do not provide

the precise statements or misrepresentations made, and fail to provide the time, place, or person responsible for the alleged statements. *See Am. Dental Ass'n,* 605 F.3d at 1291 (holding that a plaintiff pleading a RICO claim based on mail and wire fraud must alleged "the precise statements, documents, or misrepresentations made" and "the content and manner in which these statements misled the Plaintiffs").

Plaintiffs also allege that "the Individual Defendants withheld from Plaintiffs that two key personnel who were overseeing the Projects had quit because of their dissatisfaction with Defendants' handling of the Projects." (Dkt. 33 ¶ 8.)  The amended complaint, however, provides no details about which of the Individual Defendants made the misrepresentations, how or when they made the misrepresentations, what Defendants gained from the statements, or how the statements harmed Plaintiffs. *See Tri-State Consumer Ins. Co., Inc. v. LexisNexis Risk Sols., Inc.*, 823 F. Supp. 2d 1306, 1320 (N.D. Ga. 2011) (finding allegations insufficient under Rule 9(b) where plaintiff did not "specify whether the representations were oral or written, . . . identify where the statements were made, fails to identify who made any of the statements, and only generally alleges the dates the statements were made").  In

support, Plaintiffs reference Paragraphs 143 through 145 of their amended complaint.  But again, these general allegations do not satisfy Rule 9(b).  Plaintiffs have provided no particular examples of actionable fraudulent conduct.  *See Burgess*, 600 F. App'x at 663 (holding that plaintiffs are "still required to allege at least some particular examples of fraudulent conduct to lay a foundation for the rest of the allegations").

The Court continues to recognize the "double-edged sword" of the legal and factually complex nature of this situation and the business dealings between the parties.  (*See* Dkt. 30 at 14.)  But as the Court already warned, "Plaintiffs cannot rely merely on the complexity of the claims they chose to bring to evade their pleading obligations under the Federal Rules of Civil Procedure."  (Dkt. 30 at 14.)  *See United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 198 F.R.D. 560, 563 (N.D. Ga. 2000) ("[Plaintiff] should not be allowed to evade the command of Rule 9(b) by relying upon the complexity of the edifice which he created.").

And while the Court agrees with Plaintiffs that "it is unrealistic to expect complete and specific clarity regarding the entities involved in every single communication or action," Plaintiffs still must plead *some* particular instances of fraud with the specificity required by Rules 8 and

9.  (Dkt. 39 at 17.)  The Court finds that Plaintiffs have not done so and that their allegations continue to "fall short of the heightened pleading requirement" under Rule 9(b).  *See Burgess*, 600 F. App'x at 663 (finding insufficient allegations of misrepresentations made by grouped defendants and without specifics of date, time, or place); *Findwhat Inv'r Grp.*, 658 F.3d at 1296 (finding same).  This same Rule 9(b) analysis applies to each of the fraud-based counts in Plaintiffs' amended complaint, including those under federal RICO (Counts I through III), state RICO (Counts IV and V), common law fraud (Count VI), and negligent misrepresentation (Count VII).  *See Burgess*, 600 F. App'x at 663 ("[L]ike any other fraud action, a RICO claim based on fraud must be pleaded with specificity.").

> Rule 9(b)
>
> is intended to prevent the filing of fraud claims in which the facts are learned through discovery after the filing of the complaint [and] seeks to protect potential defendants from incurring harm to their reputation and to provide them with sufficient notice so as to be able to prepare a defense to a charge of fraud.  These latter goals are even more significant in the context of a RICO claim in which the allegation of fraud then gives rise to a charge of "racketeering."  A complaint alleging fraud and racketeering should be a vehicle to right a wrong, not to find one.

*Antilles Trading Co., S.A. v. Scientific-Atlanta, Inc.*, 117 F.R.D. 447, 450 (N.D. Ga. 1986) (internal quotation marks and citations omitted).  And though the Court does not characterize the matter as "nothing more than a shake down" as Defendants would have it, after carefully reviewing Plaintiffs' amended complaint and the parties' briefing, the Court finds it still cannot withstand Defendants' motion to dismiss.  (*See* Dkt. 36-1 at 56.)  The Court grants Defendants' motion on each of Plaintiffs' claims sounding in fraud under Rule 9(b) and dismisses Counts I through VII.

### 2.    Count VIII – Breach of Contract Claim

In Count VIII, Plaintiffs allege a claim against the Entity Defendants for breach of contract, asserting the Entity Defendants breached the engagement agreements and the term sheet by "failing to provide timely and accurate information needed for Plaintiffs to proceed with EB-5 applications for them and to seek funding for them."  (Dkt. 33 ¶¶ 154–161.)

To begin, the Court finds unpersuasive the argument that all of the *Entity Defendants* may be held responsible for a contract that only Defendant GreenFuels Energy, LLC, entered with Plaintiffs Gate Industries, LLC, and Southern Film Regional Center–Atlanta, LLC.

Only parties to a contract can be held to answer for any breach, not those who are strangers to the contract.  That the entities are subsidiaries or part of a "complex corporate network" does not affect this point of law. Under Georgia law, a contract binds to its terms only the parties to it. *Kaesemeyer v. Angiogenix, Inc.*, 629 S.E.2d 22, 25 (Ga. Ct. App. 2006) ("It is axiomatic that a person who is not a party to a contract is not bound by its terms."); *see Burgess*, 600 F. App'x at 664 (holding that district court correctly dismissed breach of contract claim against defendants not party to the contract).  As a result, Plaintiffs' breach of contract claim against six of the seven Entity Defendants thus fails as a matter of law.

Putting that glaring deficiency aside, Plaintiffs still do not identify any specific contractual provisions that the Entity Defendants allegedly breached, a necessary allegation.  *See Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1327 (11th Cir. 2005) (affirming dismissal of breach of contract claim where plaintiff could "point to no contractual provision" that defendant had breached).  For instance, the amended complaint identifies Sections 9, 10, and 15 of the engagement agreements.  (Dkt. 33

¶¶ 54–55.)[2]  Section 9 sets forth obligations for Plaintiffs, not Defendant GreenFuels.  (*See* Dkt. 1-2 at 3 § 9.)  Section 10 concerns the collection and reporting of information about foreign investors, but none of Plaintiffs' claims stems from alleged misrepresentations about the names of foreign investors, the amount invested, or other related information.  (*Id.* at 3–4 § 10.)  Section 15 is an indemnification clause requiring Defendant GreenFuels to indemnify Plaintiffs Southern Film and Gate Industries for any loss or liability in connection with information submitted to USCIS.  But Plaintiffs have alleged nothing about such losses requiring indemnification.

In Paragraph 158, Plaintiffs allege that "[p]ursuant to the Breached Contracts and other agreements entered into by the Parties, Plaintiffs agreed to work, exclusively, for Defendants to prepare and submit EB-5 applications."  (Dkt. 33 ¶ 158.)  The problem is that nowhere in the agreements is there a provision memorializing Plaintiffs' exclusive working relationship, which Plaintiffs concede.  Instead, the agreement specifically disclaims anything of the sort, specifying that Defendant

---

[2] Beyond the insertion of "the Entity" before "Defendants," Plaintiffs' amendment did not meaningfully or substantively change these allegations.  (*See* Dkt. 36-2 at 17–18.)

GreenFuels "acknowledges that [Plaintiffs] in the business of providing structured financing to others.  Nothing contained in this Agreement is to be construed to limit or restrict the Regional Center in the conduct of its business with respect to others, or in rendering such advice to others." (Dkt. 1-2 at 4–5 § 12.)[3]  Plaintiffs thus cannot state a breach of contract claim on this basis.

In their brief in response to Defendants' renewed motion to dismiss, Plaintiffs do not address the deficiency of failing to identify a specific provision that they allege Defendants breach, instead relying on their first response.  (Dkt. 39 at 42; *see* Dkt. 40 at 28.)  The Court, however, finds those arguments unpersuasive.  (*See* Dkt. 23 at 39–44.)  For these reasons, the Court concludes that Plaintiffs have failed to state a claim for breach of contract and grants Defendants' motion to dismiss with regard to Count VIII.

---

[3] Section 17 also contains a merger provision that supersedes any prior agreements or understanding of the parties and also renders "[a]ny purported amendment, modification, or withdrawal that is oral . . . void and of no effect whatsoever."  (Dkt. 1-2 at 5 § 17.)

### 3.   Count IX – Breach of the Covenant of Good Faith and Fair Dealing

Because the Court dismisses Plaintiffs' claim for breach of contract, the Court holds Plaintiffs' claim for a breach of the covenant of good faith and fair dealing must fail as a matter of law.  *See Burgess*, 600 F. App'x at 664–65 ("[I]n the absence of an express breach, there can be no claim for breach of the implied covenant of good faith."); *Tart v. IMV Energy Sys. of Am., Inc.*, 374 F. Supp. 2d 1172, 1181 (N.D. Ga. 2005) ("[G]eneral allegations concerning the breach of an implied duty of good faith and fair dealing not tied to a specific contract provision are not actionable."). The Court thus grants Defendants' motion as to Count IX of Plaintiffs' amended complaint.

### 4.   Count X – Unjust Enrichment/Quantum Meruit

Defendants argue that the Court must dismiss Plaintiffs' claim for unjust enrichment because the allegations are conclusory, a contract bars them, and Defendants in fact paid for the services provided.  (Dkt. 36-1 at 54–55.)  Plaintiffs argue that they assert these claims to "recover additional expenses incurred because of Defendants' delay and difficulty in providing accurate information regarding the Projects and need for the

EB-5 applications and efforts to seek financing for the Projects." (Dkt. 39 at 46.)

Count X of Plaintiffs' amended complaint does not mention this basis, however.  Instead, it recites the elements of an unjust enrichment claim, alleging that Plaintiffs provided services to Defendants, "including but not limited to assistance with EB-5 and other financing," Defendants requested Plaintiffs provide these services and knowingly accepted the services, Plaintiffs expected compensation for these services, and Defendants' receipt of the services without compensation would be unjust. (Dkt. 33 ¶¶ 170–175.)  These bare allegations are not enough to withstand a motion to dismiss.  The amended complaint has no factual support on which to base this unjust enrichment claim.  This is particularly so when Plaintiffs also admit that Defendants paid invoices from Plaintiff Gate for Plaintiffs' work on the projects. (Dkt. 1-21 at 3.) And in their response brief, Plaintiffs do not address this argument nor make any arguments that Defendants have failed to pay them.  The Court thus grants Defendants' motion as to Count X.

### 5.   Counts XI and XII – Treble and Punitive Damages and Attorneys' Fees

Plaintiffs' claims for treble damages, punitive damages, and attorneys' fees depend on the survival of their underlying substantive claims. *See United Cos. Lending Corp. v. Peacock*, 475 S.E.2d 601, 602 (Ga. 1996) ("A prerequisite to any award of attorney fees under O.C.G.A. § 13–6–11 is the award of damages or other relief on the underlying claim."). Because the Court dismisses each of Plaintiffs' substantive claims, the Court likewise dismisses both Counts XI and XII of Plaintiffs' amended complaint.

## C.   Defendants' Request Regarding Attorneys' Fees

Defendants ask the Court to order "Plaintiffs to show cause why Defendants should not be entitled to recover reasonable attorney's fees and expenses incurred in defending this frivolous action." (Dkt. 40 at 31.)

The Court finds that, although ultimately subject to dismissal, the matter is not objectively frivolous, particularly given the complicated nature of the business relationship and transactions between the parties. The Court also found Plaintiffs' RICO claims at least "colorable" to grant it jurisdiction over all Defendants under RICO's nationwide service-of-process provision.  Plaintiffs clearly believe Defendants bamboozled them

in this failed business venture, as evidenced by Plaintiffs' persistence in pursuing this action and the effort expended.  The Court finds their pursuit of this action not objectively frivolous and thus declines to order Plaintiffs to show cause or to award Defendants attorneys' fees.

### D.    Plaintiffs' Motion for Status Conference (Dkt. 46)

Since the filing of Defendants' renewed motion to dismiss, Plaintiffs have moved for a status conference.  (Dkt. 46.)  Despite the passage of time, the Court has now ruled on Defendants' motion and dismisses Plaintiffs' amended complaint.  The Court thus denies as moot Plaintiffs' motion for a status conference.

The Court also declines to grant Plaintiffs another opportunity to amend their complaint.  In the final sentence of their Response Brief, Plaintiffs "request an opportunity to further amend their pleading." (Dkt. 39 at 46.)  Plaintiffs, however, did not move to amend, attach any proposed amendments, or indicate in any way how they intended to revise their complaint. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (citing FED. R. CIV. P. 7(b)(1)).  The Court has already given Plaintiffs a chance to amend their complaint.  Plaintiffs wasted that opportunity by largely repleading the same deficient allegations with

added words here and there rather than addressing the problems identified by the Court. The Court refuses to grant them another chance, particularly in the light of the fact that Plaintiffs' conduct suggests it would be futile to do so. *See Burgess*, 600 F. App'x at 665 (holding district court did not abuse its discretion by denying plaintiffs' request to amend complaint where they "did not file a motion for leave to amend but instead included the request for leave to amend in the memorandum they filed in opposition to the motion to dismiss").

## IV.   Conclusion

The Court **GRANTS** Defendants' Motion to Dismiss (Dkt. 36) and **DISMISSES** this matter **WITH PREJUDICE**.

The Court **DENIES** Defendants' request for attorneys' fees and **DENIES AS MOOT** Plaintiffs' Motion for Status Conference (Dkt. 46).

**SO ORDERED** this 10th day of February, 2020.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE